CARROLL TOWING COMPANY, INC., Respondent, v. ÆTNA INSURANCE COMPANY, Appellant.

First Department, November 17, 1922.

Insurance — marine insurance — action on insurance policy to recover for broken propeller shaft — damage caused by contact with some floating or water-borne object other than vessel — policy excepted injury to machinery except where caused by " collision "—" collision " not confined to strict nautical meaning but includes impact of vessel with any other floating objects — damage was caused by " collision."

The plaintiff was entitled to recover on a marine insurance policy for a broken propeller shaft and other damage caused to its boat by contact with some floating or water-borne object other than a vessel, for the contact between plaintiff's vessel and the floating object constituted a collision within the meaning of that word as used in a provision in the policy exempting the defendant from liability for breakage of machinery unless caused by " collision."

The word " collision " is not now confined to the strict nautical and legal acceptation, meaning the impinging upon one another of vessels while being navigated, but by common usage the application of the term as used in marine insurance policies has been so far extended as to include the impact of a vessel with any other floating object.

APPEAL by the defendant, Ætna Insurance Company, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 14th day of March, 1922, modifying and, as modified, affirming a judgment of the City Court of the City of New York in favor of the plaintiff.

*Bigham, Englar & Jones* [*George S. Brengle* of counsel; *D. Roger Englar* with him on the brief], for the appellant.

*Foley & Martin* [*George V. A. McCloskey* of counsel; *William J. Martin* with him on the brief], for the respondent.

DOWLING, J.:

About March 10, 1919, in consideration of the payment of the premium of $429, the defendant insurance company issued in favor of plaintiff a policy of marine insurance covering the steam tug *John O. Carroll* in the sum of $6,000 for the period of one year. The policy of insurance contained the following provision:

" It is the Intent of this Insurance Company by this Policy to fully indemnify the insured for this Company's proportion of all General Average charges, salvage expenses and loss, damage, detriment or hurt to said vessel for which it may be liable under this Policy, against the adventures and perils of the Harbors, Bays, Sounds, Seas, Rivers and other waters as above named, and Fires that shall come to the hurt, detriment or damage of said vessel or any part thereof. Excepting always all claims arising from or caused by the following or other legally excluded causes, viz.: From all damage that may be done by the vessel hereby insured to any other vessel or property. From incompetency of the Master or insufficiency of the crew, or from the want of ordinary care and skill and loading and stowing the cargo of said vessel. From rottenness, inherent defects, and other unseaworthiness. From war, invasion, riots or civil commotion, theft, barratry or robbery. From the bursting or explosion of boilers, collapsing of flues, or any injury, derangement or breakage of machinery, unless caused by stress of weather, stranding, collision, or burning."

On February 2, 1920, the tug was going at a slow speed in the slip at pier 4, Bush Terminal, borough of Brooklyn. A shock was felt on board, the engine started to turn 175 to 200 revolutions a minute (instead of the normal 75) and steam was shut off and the boat stopped. On investigation it was found that the propeller wheel had been carried away, together with a part of the shaft to which it was attached; the shaft broke in the stern bearing and the break was new and there was no flaw visible. Further, a plank was broken at the stern directly above the propeller wheel and the copper sheathing over it which had been in good condition before was rolled up and bent in.

There was testimony, wholly uncontradicted, from qualified witnesses that the break was such as would be caused by contact with some floating or water-borne object, and that issue was found in favor of plaintiff by the jury, and the finding is not now attacked.

The only question involved in the appeal is one of law and is as follows: Does accidental contact between a vessel and a floating but non-navigable object constitute a " collision " within the meaning of that word as used in a policy of marine insurance?

The learned counsel for appellant contends that the word " col-

lision" as used in a policy of marine insurance means fortuitous contact between two vessels or other navigable objects. In support of his position he has collated with great industry and ability cases from many jurisdictions so holding as well as definitions from law dictionaries and text book writers. The general trend of all these citations is well expressed in 11 Corpus Juris, 1011, 1012: "In its strict nautical and legal acceptation the term 'collision' means the impinging of vessels together while being navigated; two navigable things coming into contact; the act of ships or vessels striking together; the striking or running afoul of one ship by another. Although in a strict sense collision means the impact of two vessels, both moving, and is distinguished from allision, which designates the striking of a moving vessel against one that is stationary, common usage applies the term equally to cases where a vessel is run afoul of when entirely stationary or is brought in contact with another by swinging at her anchor, or at her dock, where the stationary vessel is struck by one under way; and used in this broad sense, the term includes allision, and perhaps other kinds of encounters between vessels. Direct contact between the two vessels is not necessary, however, in order to constitute a collision; and even an injury received by a vessel at her moorings, in consequence of being violently rubbed or pressed against by a second vessel lying alongside of her, in consequence of a collision against such second vessel by a third one under way, may be compensated for under the general head of the term, as well as an injury which is the direct result of a blow, properly so called."

But whatever the rule may be elsewhere, in this State a broader meaning has been given to the word "collision." In *Newtown Creek Towing Co.* v. *Ætna Ins. Co.* (23 App. Div. 153) the action was one to recover upon a policy of insurance whereby defendant insured plaintiff "against such loss or damages as the steam tug *Rambler* should become legally liable for, from any accident caused by collision and/or stranding in certain waters, including the North river," and "to fully indemnify the assured for loss and damage arising from or growing out of any accident caused by collision and/or stranding, to any other vessel or vessels, their freight and cargoes (or each or any of them) for which said steam tug or its owners may be legally liable." The *Rambler* had the canal boat *John McMahon* in tow in the North river, when the latter suffered an accident by striking a floe of ice in such manner as to make a hole in her bow from which she sank. The plaintiff was charged with liability for the loss of the canal boat and cargo, and the question presented for consideration on appeal was whether the cause of the injury and loss came within those against which the defendant

undertook to indemnify the plaintiff, which depended upon what meaning should be given to the word " collision " in the contract.

In his opinion, in which the majority of the court concurred, Mr. Justice BRADLEY said (at p. 157): " In its common acceptation the word collision imports the act of colliding; a striking together; violent contact.   It is, however, in the admiralty sense that it is to be considered here, and it has been seen that in such sense, for the purposes of relief by libelants, it is not confined to vessels coming in contact with vessels, but includes that of vessels coming in collision with any moving or stationary objects such, for instance, as collision with a pile, driven piles, sunken hull of a vessel, drawbridge, a dredge at anchor, floating derrick, and other objects on or beneath the surface of the water."

And at page 158: " The term collision is susceptible of application to any violent contact of a vessel with another object.   We think that in this contract it has the broader and more comprehensive admiralty import."

Mr. Justice CULLEN wrote a dissenting opinion in which he said: " I concur with Mr. Justice BRADLEY that the term ' collision,' as used in this policy, should not be confined to what may be regarded as its strict nautical and legal acceptation; but I am of opinion that even in the broadest use of the term, colloquially or otherwise, ' collision ' would not be understood as including the injury which happened to the vessel which was being towed by the vessel covered by this policy.   To my mind, ' collision ' would only include contact with or impact upon foreign bodies present in the water, and not even to every case of that kind.   Here the injury was occasioned by the attempt to pass through a field of floating ice due to the temperature of the water.   It was the condition of the very medium in which the vessel was being navigated that produced the loss.   In this respect it seems to me to be a case similar to an injury produced by the waves or the storm.   I concede that contact with an iceberg would be a collision and ordinarily so described; but the case of an iceberg is different.   While it is true that the object consists solely of frozen water, as in the present case, still, under the circumstances in which it is found in the open sea, it is practically a foreign substance, the same as a wreck or a vessel.   A collision is the unexpected or, at least, the unintended. Here, if not intended, it was expected that the vessel should strike the ice, though it was equally expected that the vessel would be able to withstand the blows it might receive."

The Court of Appeals reversed the Appellate Division, holding that the idea of accident or chance was the underlying one in colli-

sions, and that as the master of the tug boat had purposely rammed his boat through the ice with the canal boat lashed to her projecting some forty-five or fifty feet in front of the tug, and with ice around the boats, and ahead and behind them, the injury caused by his action was not the result of a collision within the meaning of the policy. But in so holding Chief Judge PARKER said: " Collision, in its strict nautical and legal acceptation, originally meant the impinging upon one another of vessels while being navigated, but in course of time and by common usage the application of the term has been so far extended, in this country at least, as to include the impact of a vessel with other floating objects." (163 N. Y. 116.) So that plaintiff could have recovered in that case had the liability resulted from accidental collision with the ice instead of being the outcome of the deliberate plan and acts of its employee.

In *Western Transit Co.* v. *Brown* (152 Fed. Rep. 476; affd., 161 id. 869) Judge HOUGH said: " Neither is it denied that the word ' collision,' as used in marine insurance can no longer be limited to that fortuitously injurious contact of navigating vessels which is its obvious and natural signification." Among the cases he cited in support of this proposition is *Newtown Creek Towing Co.* v. *Ætna Ins. Co.* (*supra*).

Nor is any injustice done by the acceptance of the broader meaning attached to the word " collision " than is given in other jurisdictions. This policy of insurance was issued at the city of New York to a New York corporation to cover loss arising in New York harbor. The courts of this State had accepted the broader meaning of the word. The defendant had excepted from its general liability any injury or breakage of machinery unless caused by collision. If it desired to be absolved from damage caused by " allision " or if it was to be held for loss sustained through " collision " only in its strictest and most limited sense, it was within its province to tender a policy so drawn. Certainly the meticulous care with which the policy is drawn shows that sufficient consideration was given to the terms employed. There is no hardship involved in giving the word " collision " its ordinary and generally accepted meaning, especially in view of the declaration of the Court of Appeals that it now has such meaning by common usage.

The determination appealed from should be affirmed, with costs.

CLARKE, P. J., PAGE, GREENBAUM and FINCH, JJ., concur.

Determination affirmed, with costs.