WRIGHT, Presiding Judge.
The tug Defiance, owned by ProTransCo, was insured under two marine policies issued by American Casualty Company (hereafter called American) and the Oceanus Mutual Underwriting Association, Ltd. (hereafter called Oceanus). On March 14, 1970, a loss occurred. ProTransCo brought suit to determine which policy covered the loss. American admitted coverage and offered payment of the loss less deductible. Oceanus denied coverage because of the coverage by American. ProTransCo denied coverage by American and sought declaration of coverage by Oceanus because the deductible on that policy was $500 while the deductible on the American policy was $5,000.
The matter was submitted below upon stipulation of fact. It was agreed that if there was coverage under the American policy Oceanus had no liability. The court found coverage to be in American.
The issue is whether there was a collision by Defiance with a structure under the terms of the American policy. We reverse and remand with directions.
For better understanding of the case we now set out the pertinent factual stipulation.
“Stauffer Chemical Company maintains along the west bank of the Mobile River a dock facility and outboard of these docks there are several pile clusters and concrete and steel cells used for mooring barges. On the night of the casualty the tug DEFIANCE was bringing to the Stauffer dock a loaded barge (UM187) with the intention of leaving the loaded barge at the dock and picking up two empty barges (SCC90 and AD104) then at the Stauffer dock. In order to accomplish the exchange of barges it was necessary to shift the empty barges to make room for the loaded barge. The barge SCC90 had already been shifted to an upstream berth and secured and the tug, still made up to the loaded barge UM187 then came back down alongside the barge AD104 and secured the UM187 and the AD 104 together.
“Barge AD104 at the time had her bow facing upriver and was moored alongside and secured port side to the two northernmost pile clusters. The pile clusters were on the riverside of the dock and between the dock and the barge AD104. The AD104 was secured to the pile clusters with lines that were not part of the barge’s equipment but were provided by others for this purpose. The mooring lines were made up at the pile clusters by being tied to the wrapping cables which secured the groups of piles together.
*587 “Running between the three pile clusters, partially in the water and partially out of the Water, was a continuous cable used by Stauffer personnel to shift the barges alongside the pile clusters as was necessary. On each of the three pile clusters was a sheave. The distance between the pile clusters was 120' and the barge AD104 was moored alongside two of these clusters. A continuous cable ran from a winch at the south end of the pile clusters through the sheaves on the riverside of each of the three clusters and then back from the northernmost cluster to the southernmost cluster and back to the winch. The cable gave the appearance of being an upper cable running through the three sheaves and a lower cable as this continuous cable was slack alongside the center cluster.
“On the night of the casualty there were two deckhands assigned to the DEFIANCE. After these deckhands had secured the loaded barge UM187 to the barge AD104, deckhand Bob Huron proceeded to the forward port bit on the barge to cast off and deckhand Albert R. Ayala, Sr., went to the stern port bit for the same purpose. The deckhands then proceeded to cast off all mooring lines securing the AD104. The DEFIANCE then came forward and started to swing the two barges out into the river with the intention of bringing the AD104 alongside of and securing it to the riverside (east) of the barge SCC90. During this shifting maneuver the stern of the AD104 swung inside the plane of the pile clusters and the after port bit of the barge got hung up on the top shifting cable attached to the clusters. As the tug and barges continued then to move away from the pilings this cable became taut and the deckhands were unable to throw it off and the center pile cluster was pulled over by the momentum of the movement and was damaged as a result. The entire damage to the Stauffer property was the result of the contact between the bits on the barge and the fixed shifting cable and the pulling or tugging on the pile cluster resulting therefrom. There was no other contact between the barge and the pile cluster or the barge and the dock in this maneuver.” (Emphasis ours.)
We first observe that we indulge no presumption as to the correctness of the findings of fact by the trial court because of it having heard the testimony. Such presumption is not to be indulged by the reviewing court when the evidence below was stipulated. Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115 (1950).
We next observe that we have before us the anomalous situation of an insured contending against coverage under the terms of his policy. ProTransCo urges that the terms of the American policy be construed most favorably to the insured. ProTransCo actually means that it wishes us to construe the policy so as to favor its present interest — that is that there is no coverage under the American policy so that it can recover under the more advantageous Oceanus policy.
The principle of construction urged by ProTransCo is well known, but it is based upon the proposition that the contract of insurance is written by the insurer and if there is any reasonable uncertainty as to its meaning which requires construction by the court, that uncertainty should be resolved in favor of coverage. Aetna Life Ins. Co. v. Hare, 47 Ala.App. 478, 256 So.2d 904. ProTransCo is not invoking the principle in this case to secure coverage, but to defeat coverage which the insurer admits is provided by the policy. This is not a case for the principle of liberal construction in favor of an insured.
There can be little reasonable in-sistance that the pilings were not “structures, floating or otherwise” under a normal and reasonable construction of the term. There is little logic or reason in contending that the steel cable attached to each piling and extending to all of them and used in conjunction with them in mooring or unmooring barges was not an appendage of and a part of the “structure.” They are as much a part as would be a *588 fender attached to the piling or a catwalk between the pilings. Such reasonable and practical application is most favorable to the insured seeking coverage. Trans-Continental Mut. Ins. Co. v. Harrison, 262 Ala. 373, 78 So.2d 917 (1955). Words of an insurance contract are to be given their natural and usual meaning so as to produce a rational and practical interpretation. Canal Ins. Co. v. Stidham, 281 Ala. 493, 205 So.2d 516 (1968). We find that the pilings were structures or collectively was a structure and the cable attached was an integral part of the structure. Our finding is supported by Webster’s Third New International Dictionary which defines “structure” as something “built or constructed.”
The remaining aspect of the issue is whether the hooking of the cable by the bit on the barge and the subsequent pulling was a collision with a structure.
Collision by connotation and definition is the violent or forceful striking together of things opposed. Webster’s Third New International Dictionary. In maritime law, collision has come to mean the violent contact of a vessel with another vessel though one vessel is not in motion. 44 Am.Jur.2d Insurance § 3180. Bennett S. S. Co. v. Hull Mut. S. S. Protecting Soc’y Ltd., 82 L.P.K.B.(N.S.) 1003 (1913). Express terms of insurance policies have broadened the meaning of collision to include contact by a vessel with any moving or stationary object. Carroll Towing Co. v. Aetna Ins. Co., 203 App.Div. 430,196 N.Y.S. 698.
The problem arises in this case not with the vessel and/or structure involved, but in applying the broad definition of collision with the facts as stipulated. A collision must be considered as the result of the act of colliding. There is no authority to be found that does not include in the definition of collision terms of force or violence, such as “violent encounter,” “forceful striking together,” a “clashing meeting,” “violent impact,” or a “meeting in sharp direct opposition.”
The factual event occurring in that case is underlined in the quoted stipulation. These undisputed facts connote no violent encounter nor forceful impact. There was no more collision by definition than if the damage had been done by the tug pulling away without casting off the mooring line of the barge from the pile. The facts stated indicate no forceful coming together of the cable and the bit of the barge. They merely became hung up while the tug was preparing to pull away. There was no collision. The judgment of the trial court must be reversed.
According to the stipulation, the loss paid by ProTransCo on December 7, 1970 was $7,865.00. It was stipulated that if coverage was not provided by the policy of American, there was coverage under the policy of Oceanus. It was further stipulated that if ProTransCo was entitled to recover from Oceanus, the amount recovered would be $7,365.00; that interest at the rate of 6% per annum from December 7, 1970 might be added in the discretion of the court. Having found no coverage in the American policy, the court now reverses the judgment of the trial court and remands the case with direction to the trial court to enter judgment in favor of ProTransCo and against the Oceanus Mutual Underwriting Association, Ltd. in the sum of $7,365.00. Interest at 6% from December 7, 1970 may be added at the discretion of the court.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concur.