# Harris Cortner & Co. *v.* Oneonta Trust & B. Co.

## *Assumpsit.*

(Decided April 14, 1914. 65 South. 68.)

1. *Account; Action On; Liability.*—An account includes every item of indebtednes by contract express or implied; hence, where defendant had an agent engaged in the purchase of cotton, and wrote the agent to arrange with the bank to honor checks for the purchase price of cotton which would be taken up with drafts on defendant, and plaintiff bank agreed to such an agreement, it could recover on account for the amount of checks honored but not taken up.

2. *Contracts; Principal and Agent; Liability of Principal.*—Under the arrangement here shown defendant is liable to the bank for the amount of checks honored but not taken up regardless of whether the transaction was in the name of defendant or that of its agent, and, as the defendant was the only party benefited, it cannot avoid liability on the theory that the requirement that drafts should be accompanied by bills of lading so qualified its liability as to confine it to such drafts alone.

3. *Same; Items of Recovery.*—Where a cotton buyer induced a bank to honor its agent's checks for the purchase price of cotton, which checks were to be taken up by drafts subsequently issued, the amount of exchange and express charges on the funds advanced under the arrangement was properly included in the draft where it was agreed that the buyer should pay them.

4. *Principal and Agent; Liability of Principal.*—The agent not being a general one, the principal is not liable for checks drawn by the agent for expenses, not included in the agreement, unless the payment of such check was ratified by the principal.

5. *Same; Action; Jury Question.*—The question whether the payment of checks covering the items of expenses, drawn by the agent and honored by the bank, were ratified by the principal, was one for the jury under the evidence in this case.

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by the Oneonta Trust & Banking Company against Harris, Cortner & Company, on an account. Judgment for plaintiff and defendant appeals. Reversed and remanded.

EYSTER & EYSTER, and CALLAHAN & HARRIS, for appellant. Under the hypothesis in the charge, the jury

would have no right to disregard Winn's entire evidence, as therein instructed.—*Prater v. State,* 107 Ala. 32; *Little v. State,* 39 South. 674. No man can be made another's debtor against his will.—*Seals v. Edmondson,* 73 Ala. 298; *Beard v. Houghton,* 86 Ala. 204; 2 Enc. P. & P. 1912. Plaintiff, therefore, could not recover under the common counts. No ratification is shown. —*Botts v. McCoy,* 20 Ala. 578; *Brown v. Bamberger,* 110 Ala. 355. The oral charge of the court was bad. —75 Mass. 287; *Beard v. Houghton, supra;* 2 Stew. 500; 5 Ala. 258. Knowledge of all the material facts and circumstances connected with the act of the agent is essential to a binding ratification by the principal.— *Herring v. Skaggs,* 73 Ala. 455; *First N. Bank v. Allen,* 100 Ala. 467; *Moore v. Enslen,* 112 Ala. 245; *Halloway v. Borden,* 168 Ala. 261. Under the circumstances shown the legal effect of the banks cashing the checks was a loan to agent, and taking the loan and extinguishing his shortage with defendant left the agent debtor to the bank, and it having been received by defendant in good faith, it cannot now be recovered by the bank.— *Ala. N. Bank v. Rivers,* 116 Ala. 11; 27 Cyc. 860; 79 N. Y. 183. Defendant is not liable to the bank for the checks drawn to cover the expenses of its agents.—2 Stew. 500; 5 Ala. 258.

T. B. RUSSELL, OSCEOLA KYLE, and E. W. GODBEY, for appellee. The request must be construed to mean checks signed in the principal's name by the agent.— *Thornton v. H. A. & B. R. R. Co.,* 94 Ala. 357; 122 Am. St. Rep. 434; *Lytle v. Bank of Dothan,* 121 Ala. 215. The receipts and use of the cotton by defendant was a ratification of the payment of such money by the bank to the original vendors of the cotton.—*Louisville C. Co. v. Stokes,* 79 Ala. 372; *Hoene v. Pollak,* 118 Ala. 624;

104 U. S. 192; 122 Am. St. Rep. 435; 31 Cyc. 1273. Whether an agent's act is warranted by the authority conferred is a question of law for the court.—7 A. & E. Ann. cases, 1037.

McCLELLAN, J.—Harris, Cortner & Co. was a firm the business of which was dealing in cotton. Offices were maintained at Decatur and Anniston, in this state. Oneonta was a cotton-buying point within the territory assigned to the Anniston office. W. S. Hanserd was engaged by the company to buy cotton at Oneonta, and under that engagement did buy at that point as well as at others in that section. The contract with Hanserd is thus summarized in the record: "Dated Anniston, Oct. 1, 1910,—was signed by Harris, Cortner & Company, (and) by W. S. Hanserd, and in which it was stipulated that Harris, Cortner & Company, employed W. S. Hanserd from Oct. 1, 1910, until April 1, 1911, a period of six months, at a salary of $75.00 per month, and the same salary was to be paid him if he continued longer in the service of Harris, Cortner & Company, and the said Hanserd was to buy cotton for Harris, Cortner & Company, at said salary." From October 1, 1910, until the 10th day of that month, Hanserd bought cotton for the company at Oneonta, drawing a draft, with bill of lading attached, on Harris, Cortner & Co. at Anniston to cover each purchase, which draft was honored by the appellee bank, with the result that the seller was paid in cash for his cotton. These purchases, and all others there made by Hanserd, were made subject to verification, in price, grade, and weight, at the Anniston office.

After the stated method had been observed for several days, Hanserd was advised or instructed, by letter from Harris, Cortner & Co., to him, of date October 8,

1910, as follows: "Please see if you cannot arrange with your banks to let you issue checks during the day for the cotton you buy, and then take up these checks every afternoon with drafts on us with bill of lading attached. This will help us considerably, and we think you can make this arrangement with them all right." This letter was shown the managing officers of the appellee bank.

In brief for appellant it is staed: "Hanserd then opened an account with the Oneonta Trust & Banking Company in the name of Harris, Cortner & Co., and would pay for cotton, which he purchased, or alleged to have purchased, for Harris, Cortner & Co. by checks on the Oneonta Trust & Banking Company, signed Harris, Cortner & Co. by W. S. Hanserd, and Hanserd would then draw a draft on Harris, Cortner & Co. at Anniston, with bill of lading attached, and deposit the same with the Oneonta Trust & Banking Company, which in due season would be paid by Harris, Cortner & Co. When the drafts, with bill of lading attached, were placed in the bank, Harris, Cortner & Co. was credited with the draft. In some indefinite sort of way, due to alleged shortgage in weight and claims paid, Hanserd overdrew at the bank in large sums, totaling between $2,000 and $3,000, and the appellants are sued for the amount of this overdraft."

When the letter of October 8th is considered in the light of the theretofore prevailing practice observed by Hanserd in purchasing cotton for appellant at Oneonta, there would seem to be no fair doubt of the necessary legal effect of the quoted statements of the letter and of the resultant legal responsibility of the cotton company. It is manifest that no financial or other valuable benefit accrued to Hanserd under the stated original practice or under that established and observed in asserted re-

liance upon the letter of October 8th. Hanserd's duties were to buy cotton on a monthly salary, with certain expenses to be borne by the company. There is nothing to indicate the entertainment, by any one, of the purpose or intent to impose upon Hanserd, or for Hanserd to assume, the obligation or duty to furnish the funds with which to buy cotton for the company. Omitting particular consideration of the "check" feature, the obvious purpose of the letter was to induce the bank to furnish the means with which Hanserd was to purchase cotton at that point. Manifestly, the "checks" alluded to in the letter were to be drawn on the bank, and their payment by the bank necessarily formed the basis of the draft, with bill of lading attached to be drawn on the company at Anniston. The whole process disclosed by the evidence was, of course, for the convenience and advantage of the company in purchasing cotton at Oneonta. For his service, Hanserd was to be paid and was paid a salary, with allowance for certain expenses in effecting the purpose of his engagement; and the bank was to be compensated for the advance of money it would and did thus make to accomplish the company's object in buying cotton. Whether Hanserd, by arrangement with the bank, established an account against which to check, to pay the sellers of cotton to the company, in his own name or in that of the company was and is, as the trial court concluded, entirely immaterial as respects the liability of the company to reimburse the bank for the aggregate sum, thus furnished the company and invested by its direction and authority, by its representative in the cotton less, of course, the total sum paid by the company through draft drawn upon it by Hanserd in favor of the bank.

If the funds furnished by the bank were employed by the company's representative (Hanserd) in the pur-

chase of cotton for the company, it was of no importance, as respects the company's liability, whether an account, in the company's name, was opened with the bank by Hanserd or a formal method of issuing "checks" was established or observed.

There were six counts in the complaint. Those numbered 3, 4, and 6 were charged out by the court at the instance of defendant (appellant). The three remaining counts submitted by the trial court to the jury proceeded respectively on these respective theories of liability: An open account, money loaned, and money paid by defendant for plaintiff. While under the undisputed material evidence the affirmative charge for plaintiff might have been justified on counts numbered 2 and 5—questions not now necessary to be considered as we view the matter—that instruction was due plaintiff under the count numbered 1, on an account. "An 'account' is a general term which covers any item of indebtedness, by contract, express or implied."—*Dees v. Self*, 165 Ala. 225, 228, 51 South. 735. The authority of the letter of October 8th was conclusively established—if, indeed, it was not admited by the defendant. That the outlay of funds by the bank, on the order or checks of Hanserd whom the letter of October 8th vested with the defendant's authority to make the arrangement with the bank and to invite the advances by the bank, created, unmistakably, the relation of debtor and creditor between the bank and the cotton company for the sums so expended or furnished by the bank. Thus an indebtedness by defendant to plaintiff was created, for the payment of which, by the defendant to the bank, there was and is a necessary implication of law so to do. It is not conceivable that the furnishing of funds under such circumstances could be effected and yet no liability to repay exist against the party inviting the outlay for his

advantage and benefit in carrying on his business. That the bank should or could be held as a censor or guarantor, in any sense or degree of the competency, accuracy, or fidelity of defendant's fully commissioned agent (Hanserd) in ordering the payment of funds by the bank in the purchase of cotton, is a contention that cannot be approved. The fact that after the payment for cotton during the day the draft for the aggregate amount should be accompanied with bill of lading did not qualify the obligation of the defendant to reimburse the bank for the sums paid by the bank under the authority of the letter of October 8th.

The only open question was the measure of the recovery; the legally chargeable items composing it, which, when properly summed up, and the aggregate sum legally paid by defendant deducted therefrom, should give the amount of the defendant's liability. It appears that approximately $130,000 was paid out by the bank between October 8-10, 1911, and April 10, 1912. Drafts drawn by Hanserd, and paid by defendant, tolled this sum to an amount (as plaintiff contends) to about $2,700. The unpaid part of the account (called an "overdraft") was variable in amount between the dates stated, being sometimes large and sometimes small. The action was distinctly rested by the plaintiff upon the idea that particular checks had not been paid—evidently on the notion that they were not included in any draft drawn by Hanserd and paid by the defendant. A list of checks drawn by Hanserd on the account called the 'Harris, Cortner & Company account" and paid by the bank is shown in the transcript. This list contains items that, manifestly, could not be justified under the authorization of the letter of October 8th. One class of these items was board for the keep of Hanserd. The obligation assumed by the defendant to pay Hanserd's

expenses, at Oneonta or other places to which he was sent to buy cotton, did not, of course, alone authorize the bank to advance or pay expenses incurred by Hanserd outside of the authority expressed in the letter of October 8th. If in his service of defendant Hanserd paid his personal expenses by checks which later went into the amount of drafts drawn as before indicated, the defendant could not be charged therewith unless with full knowledge of the facts drafts embracing the sums expended for Hanserd's personal expenses were paid by the defendant. It cannot, on this record, be so affirmed as a matter of law.

The trial court, in one aspect, appears to have proceeded in its instructions to the jury upon the theory that, independent of ratification by the defendant of payments made by the bank for expenses of Hanserd, the defendant was liable if such expenses or payments were "in furtherance of the business in a legitimate way"—"in furtherance of defendant's business." This was error. There is no evidence that Hanserd was the general agent of the company. The letter of October 8th bore a restricted authority only; and under its authorization neither Hanserd nor the bank could create a liability against the defendant, although, after full knowledge by the defendant, a liability might have become fixed as the result of ratification by the defendant.

There was evidence tending to show the defendant's agreement to pay the bank exchange and express charges on the funds with which Hanserd would pay for cotton. If this was found to be true, items therefor were legally chargeable against defendant and were properly included in the amounts of drafts drawn by Hanserd on the defendants.

The court was in error in charging the jury as follows: "No. 12. If the jury believe the evidence, then the court charges the jury that the $100 check signed in the name of Harris, Cortner & Co., by W. S. Hanserd, of date December 6, 1910, payable to the order of Harris, Cortner & Co., and purporting to be indorsed by Harris, Cortner & Co., constituted a liability against, Harris, Cortner & Co., provided the bank paid said check."

Whether this item was chargeable against the defendant depended upon whether one Mason, employed in defendant's service at its Anniston office, had authority to bind the defendant in the premises and thereby ratify the previously unauthorized act of Hanserd's utterance of checks in defendant's name. That was an issue of fact, and upon it the evidence was not without dispute.

The court was in error in affirmatively instructing the jury that the item (check) for $55.65 ($55.91) was a subject of charge against the defendant. Whether Hanserd was authorized to pay that sum as he did pay it was a jury question. The court took the solution of it from the jury.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and DE GRAFFENRIED, JJ., concur.