# Twin Tree Lumber Co. *v.* Ensign, *et al.*

### *Assumpsit.*

(Decided May 13, 1915.   Rehearing denied June 30, 1915.
69 South. 525.)

1. *Pleading; Amendment; Complaint.*—Where the original action was stated on the common counts and submitted to the court on an agreed statement of fact, it was not error for the court to permit an amendment by adding a count as for money had and received, after the cause had been submitted but before the court had decided it, since the amendment merely effected a better and more accurate statement of the cause of action.

2. *Corporations; Sale of Stock; Construction.*—Where the contract for the sale of a corporation provided that the bills and accounts receivable for sales made by the corporation prior to a certain date should belong to the seller, such contract did not comprehend rebates paid by a railroad company to the corporation under the order of the Interstate Commerce Commission, as the phrase, "accounts for sale," signifies the obligation of a buyer to a seller.

3. *Contract; Construction; Extrinsic Evidence.*—Where the meaning of a contract is clear and free from ambiguity the subsequent conduct of the parties, in supposed observance of its terms, cannot be considered as aids in its construction.

APPEAL from Chilton Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by E. G. Ensign and others against the Twin Tree Lumber Company, to recover a sum of money. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

LAVENDER & THOMPSON, for appellant.

RUSHTON, WILLIAMS & CRENSHAW, for appellee.

McCLELLAN, J.—E. G. Ensign, J. I. Ensign, and W. S. Hollister instituted this action against the Twin Tree Lumber Company, an Alabama corporation. Originally the common counts, other than that to be mentioned, were employed to state the cause of action. The general issue was appropriately pleaded; and by agreement the case was submitted to the court, without jury, on an agreed statement of the facts; the provision being that the record should show a request for the affirmative charge by each party, that it should be made to appear as if refused to the party against whom the court concluded, and that a verdict, as of the jury, should enter, consistent with the court's conclusion on the agreed facts.

(1) Before the next term of the Chilton circuit court, and before decision of the case by the court, and after its submission, the plaintiffs discovered that the form in general use, in such circumstances, in the Montgomery circuit court, one of which had been originally appropriated to state the cause of action of these plaintiffs, did not contain a count as for money had and received. The plaintiffs moved the court, at the next term and before decision, to set aside the submission and allow the amendment by the addition of a count as for money had and received. The motion was contested, and was granted, the submission was set aside, the amendment was made, and the cause was similarly resubmitted on the agreed statement of facts. The defendant saved for review the action of the court below in setting aside the submission on the agreed statement and allowing the mentioned amendment of the complaint.

[Twin Tree Lumber Co. v. Ensign, et al.]

At the time the motion was made to set aside the submission the cause was in the breast of the court. It was in fieri at least in so far as respected the discretionary right and power of the court to seasonably, and upon seasonable motion, set aside the submission, in order that an amendment, like that described, might be made, to the end that justice might be attained upon the merits of the cause in contest between the parties. The amendment here seasonably sought and allowed, after submission set aside, was to effect a better, more accurate statement in the complaint of the cause of action the plaintiffs desired to assert, and that it might be finally adjudicated. The court's sound discretion was invoked; and under the circumstances indicated, and shown to the court, it cannot be ruled that the discretion of the court was abused.—38 Cyc. pp. 1938, 1939; *Chicago R. R. Co. v. Bank,* 26 Ind. App. 600, 59 N. E. 43. No prejudice of any substantial right of the defendant was thereby wrought. The amendment condemned in *Watkins v. Canterberry,* 4 Port. 415, was allowed after the cause had been submitted to the jury; and by the amendment "a different case was [is] made than the parties assented to try." The case here and that mentioned are so materially different as to render that recision of no present authority. The citation in appellant's brief of 1 Ency. Pl. & Pr. p. 603, is subject to similar differentiation. To deny the court the possession of the discretion to allow an amendment, of the nature and effect made in this cause, under the circumstances here disclosed, would oppose the general wholesome spirit and just purpose of our law in respect of amendments to the end that justice may be administered. There is no merit in the insistence for error because the agreed submission was set aside and the mentioned amendment was allowed.

The action is to recover a sum of money collected by the corporation from railroads under these circumstances: "The Twin Tree Lumber Company had a sawmill and manufacturing plant at Maplesville, Ala., and manufactured pine lumber, selling the same in the markets throughout the country to customers at various points north of the Ohio river, east of the Mississippi river, and west of the Buffalo and Pittsburg line. The sale in each instance to the purchaser was f. o. b. the city or town in which the customer lived, less freight, and in each instance the car was shipped with freight to be collected at destination, and in each instance the customer or purchaser would first pay the railroad freight, deduct the amount thereof from the invoice price, and remit the remainder to the Twin Tree Lumbure Company. For a certain period the railroads handling this lumber charged an increased rate of 2 cents on each 100 pounds, and the Twin Tree Lumber Company, together with other sawmill people, employed Messrs. Green & Green to institute proceedings before the Interstate Commerce Commission contesting the legality of the increased rate. The Interstate Commerce Commission decided against the railroads, whereupon the rairoads returned to and paid over the abovementioned sum of $1,410.10 to Messrs. Green & Green, as attorneys for the Twin Tree Lumber Company; the same being received as a full settlement of the amount due by the railroads to the Twin Tree Lumber Company for said excess of freight on lumber to said points."

On February 5, 1907, the Ensigns and Hollister (E. G. Ensign, called the "seller," acting for himself and the other two plaintiffs) entered into a contract, to which the corporation (defendant) was made a party, with Kroll, Sparrow & Sands for the sale of one-half

the capital stock of the corporation. It was provided therein that Ensign and his associates should pay all of the debts of the corporation, except two described in the instrument, the aggregate of those engaged to be paid being limited to a certain amount. Except in the particular involved in this suit, the contract was fully carried out by the parties. Section 9 of the instrument provided: "Ninth. The company's bills and accounts receivable for sales prior to February 1, 1907, shall belong to the seller and his associates and be properly transferred to him and them."

In section 5 of the instrument these provisions occur: "The seller also covenants that any claim against said company pending on the 1st day of February, 1907, other than the debt due to the Alabama Mineral Land Company, and cost of said skidder above stated, whether now known or shall hereafter be made known, of any nature, shall be paid by him, and that said company and the buyers at all times shall be saved and kept harmless therefrom and from any expenses and costs connected therewith. By the word 'claims' is included claims for damages on account of personal injury, trespass upon lands, actions growing out of defective titles, or alleged to be defective, and every claim of every other nature that has arisen, or may arise, other than those specifically above excepted for ground acquired prior to February 1, 1907."

(2) The chief insistence for appellant on the merits arises over the meaning and effect of the ninth paragraph of the contract; the questions being whether that provision comprehended the investment of the plaintiffs with the right to the rebates paid to the corporation by the railroads because of unlawful exaction made by the carriers in connection with the sales of

lumber described in the foregoing quotation from the agreed statement of facts. It appears that the unlawful exaction made by the carriers in the form of freight charges was with reference to contractual elements of sales effected prior to February 1, 1907, and that the sums thus collected by the railroads were, in effect, paid by the corporation in the progress of sales made prior to the date stipulated. This sum, wrongfully exacted, came back to the corporation. Was it the product of an "account for sales" prior to the date specified, within the purview of the ninth paragraph? Clearly it was not within the meaning of bills receivable, as those words are used in that paragraph of the instrument. This court has thus defined "account": "An 'account' is a general term which covers any item of indebtedness, by contract, express or implied."—*Dees v. Self,* 165 Ala. 225, 228, 51 South. 735; *Harris et al. v. Oneonta Co.,* 186 Ala. 484, 65 South. 68. The term " 'account' includes goods sold and delivered, or consigned to be sold, money had and received, and work done and materials furnished."—*Morrisette v. Woods,* 128 Ala. 505, 507, 508, 30 South. 630.

It is not possible under the terms of this instrument to determine the stated question by recourse to the varied meanings of the word "account" alone; for that term is immediately qualified by the further expression, "for sales prior to February 1, 1907." "Account," when employed, as here, in connection with the term "sale," can have no other signification than that of the obligation of a buyer to a seller—a state of indebtedness by a buyer to a seller. The phrase "accounts for sales," as employed in the ninth paragraph, meant obligations by buyers to the selling corporation for things sold and unpaid for. It is not, as we see it, at all equivocal

or ambiguous. That meaning is clear. And no other provision in the instrument has the effect to modify or qualify the stated meaning of the ninth paragraph.

(3) Where the meaning of a contract is clear, free from ambiguity, the subsequent conduct of the parties, in supposed observance of its terms, cannot be considered as aids in its construction.—*Gadsden Ry. Co. v. Gadsden Land Co.*, 128 Ala. 510, 518, 29 South. 549; 9 Cyc. 590. If it should be assumed that the acts and conduct of an agent of this corporation, in paying to the plaintiffs similar claims to that here sought to be enforced, was authorized or ratified, still that matter cannot be availed of to deflect the construction of this contract, so as to make the unambiguous provisions of the ninth paragraph comprehend a claim of the nature declared on in this action.

The judgment is reversed; and, consistent with the statute (Code, §§ 2890, 5361), the judgment will be here rendered for the defendant.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.