(97 South. 837)

RELIANCE AUTO CO. v. HERREN SALES CO. (6 Div. 940.)

(Supreme Court of Alabama. Oct. 11, 1923. Rehearing Denied Nov. 15, 1923.)

1. Appeal and error ⚿1078(1)—Errors assigned but not argued in brief considered waived.

Errors assigned in civil cases, but not argued in brief, will be considered waived and not reviewed on appeal.

2. Sales ⚿54—Refusal of evidence of conduct to aid interpretation of unambiguous telegrams as to increase in price of automobiles held proper.

Telegrams from an automobile distributor to a dealer as to increase in price of automobiles held free from contradiction, uncertainty, and ambiguity as to whether protection on orders on hand was to be granted by the distributor or by the manufacturer, and hence there was no error to refuse to admit as an aid in interpreting them proof of the subsequent conduct and words of the parties.

3. Sales ⚿391(2)—Distributor of automobiles held bound to protect dealer against increase on a particular sale.

Where an automobile distributor notified its dealer of an increase in list price of automobiles, but stated it would protect bona fide unfilled retail orders on hand, and subsequently received and approved affidavit covering sale pending, when the increase was made, and received credit therefor from the manufacturer, held, that it was liable to the dealer on account of such sale.

4. Sales ⚿91—Distributor of automobiles held not entitled to damages for dealer's failure to take quantity specified.

Contract between automobile distributor and dealer, under which distributor agreed to ship dealer specified quantity and variety of cars monthly if dealer paid draft within prescribed time, and did not reduce number of cars to be shipped, but providing that, if dealer instructed distributor to cancel any car scheduled for any month, then distributor, at its option, was released from obligation to deliver, gave distributor no right to damages for dealer's failure to take the full quantity specified.

Appeal from Circuit Court, Jefferson County; Dan A. Greene, Judge.

Action by the Herren Sales Company against the Reliance Auto Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Coleman & Coleman and Spain & Stewart, all of Birmingham, for appellant.

The construction put upon the contract by the parties themselves should be looked to in determining its legal effect if the language employed leaves the true meaning in doubt. 13 C. J. p. 546; 2 L. R. A. Digest 1888–1918, 2276; Shriner v. Craft, 166 Ala. 146, 51 South. 884, 28 L. R. A. (N. S.) 450, 139 Am. St. Rep. 19; Birmingham Waterworks Co. v. Hernandez, 196 Ala. 446, 71 South. 443, L. R. A. 1916E, 258; Bixby v. Evans, 174 Ala. 581, 57 South. 39; Hertz v Montgomery Journal Pub. Co., 9 Ala. App. 178, 62 South. 564. The loss of profits on cars sold which purchaser refuses to accept is a proper basis of the measure of damages. Macan v. Scandanavian Belting Co., 264 Pa. 384, 107 Atl. 750, 5 A. L. R. 1502.

Knox, Acker, Sterne & Liles, of Anniston, and Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

Where the meaning of a contract is clear and free from ambiguity, the subsequent conduct of the parties, in supposed observance of its terms, cannot be considered as aids in its construction. Twin Tree Lbr. Co. v. Ensign, 193 Ala. 113, 69 South. 525; Gadsden Ry. Co. v. Gadsden Land Co., 128 Ala. 510, 29 South. 549; Montgomery L. & T. Co. v. Avant, 202 Ala. 404, 80 South. 497, 3 A. L. R. 384; Ex parte Stollenwerck, 201 Ala. 392, 78 South. 454; Birmingham Waterworks Co. v. Windham, 190 Ala. 634, 67 South. 424. Instruments should be construed most strongly against the person undertaking or entering into the obligations. Ashley v. Cathcart, 159 Ala. 474, 49 South. 75; Evans v. Sanders, 8

---

⚿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Port. 497, 33 Am. Dec. 297; Willis v. Neal, 39 Ala. 464; Comer v. Bankhead, 70 Ala. 136; Hogan & Co. v. Reynolds, 8 Ala. 59; Hunter v. McCraw, 32 Ala. 518.

MILLER, J. The Herren Sales Company, a corporation, brings this suit against the Reliance Auto Company, a partnership, for a refund on the price of eight automobiles, for the difference between the price of the cars when sold by it to different customers and the increased price thereon, which was paid by plaintiff to the defendant when the cars were received and delivered by it to the customers. There was judgment by the court in favor of the plaintiff, and this appeal is prosecuted by the defendant from it.

[1] There were six counts in the complaint. Counts 1 and 2 allege the contract between the parties and its breach, and the other counts were the common counts. The demurrers were overruled by the court; and these rulings of the court are assigned as errors, but they are not argued in brief of appellant. Errors assigned in civil cases, not argued in brief of appellant, will be considered waived and will not be reviewed by this court on appeal. Hodge v. Rambo, 155 Ala. 175, 45 South. 678, headnote 6; Sokol Bros. Furniture Co. v. Gate, 208 Ala. 107, 93 South. 724, headnote 2; Hymes v. State, 209 Ala. 91, 95 South. 383.

The defendant pleaded in writing the general issue in short by consent with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action and as set-off or recoupment against it to have effect as if so pleaded, and with leave to plaintiff to give in evidence any matter which, if well pleaded, would be admissible in reply to such defensive matter. Issue was joined thereon by the defendant. The case was tried by the court without a jury.

The plaintiff, appellee, was a dealer, and the defendant, appellant, was a distributor under a contract between them covering sales of all Essex and Hudson motor cars in the counties of Calhoun, Cleburne, Talladega, and Clay, in Alabama, made by the distributor, the defendant, to the dealer, the plaintiff. The defendant purchased them from the factory at list prices, sold them to the plaintiff, and the plaintiff resold them at the list prices to the customers in those counties under the contract. The defendant received a discount on each car from the factory price, and the plaintiff received a part of this discount from the defendant on all cars sold in this territory under the contract. The defendant paid the factory, and plaintiff paid defendant for the cars.

The defendant sent two telegrams to the plaintiff—one was dated February 19, 1920, and the other May 2, 1920. They read as follows:

"Birmingham, Ala. 2/19/1920.

"Herren Sales Co., Anniston, Alabama. Effective midnight, February eighteenth list price Hudson phaeton and speedster advances two hundred dollars and all other Hudson models advance three hundred dollars stop list price on Essex sedan advances one hundred dollars Essex touring and roadster fifty dollars stop new prices apply on all shipments and factory deliveries on and after February nineteenth stop will protect bona fide unfilled retail orders on hand close of business February eighteenth affidavit forms follow must be properly executed and returned to us before March first.

"Reliance Auto Company."

"Birmingham, May 2nd, 1920.

"Herren Sales Company, Anniston, Alabama. Effective midnight May first. List prices advanced two hundred dollars on all models both Hudson and Essex. New price applies on all shipments and factory deliveries after May third, protection will be granted on bona fide retail orders on hand close of business May first. Advise by wire orders on hand so we can furnish you affidavits as same must be returned to factory before May tenth. We cannot guarantee any orders will be protected against any future price change. Please be governed accordingly. Acknowledge by wire.

"Reliance Auto Co."

These telegrams were received by the plaintiff on the respective days each bears date. The evidence for plaintiff tended to prove that before one or both of these telegrams were received it had sold ten cars to its customers at the factory prices before this increase of prices had been made. It is undisputed that plaintiff paid to the defendant the increased price on each of these ten cars when they were delivered to it, and the defendant paid the increased price to the factory. The factory afterwards refunded to the defendant and the defendant refunded to the plaintiff the price protection on two of these ten cars. This suit is for the overpayments made and required to be made to the defendant on the remaining eight cars when they were delivered by the defendant to the plaintiff.

The plaintiff sent affidavits as to sales of the eight cars, and names of purchasers to the defendant, they were approved by the defendant, and the defendant forwarded them to the factory, the Hudson Motor Car Company, and they were approved by it. The Hudson Motor Car Company sent to the defendant credit memorandum papers of each car, showing reduction on the original bill of price protection on list increase on each car. The head man of the auditing department of the Hudson Motor Car Company testified that "the defendant company [Reliance Auto Company] was allowed on its account with the Hudson Motor Car Company by reason of the rebate made by the defendant to the purchasers of said automobiles," and then he gives the figures on each of the eight cars, with which defendant was credited. He fur-

ther testified, "The Reliance Auto Company's account with the Hudson Motor Car Company remains with an unpaid balance." The defendant testified they received no statement of account from the Hudson Motor Car Company showing these amounts to their credit, but they received credit slips or memoranda of the eight cars showing credits allowed for the different amounts, "but it at the same time shows a charge of another item which is an illegitimate charge." The "illegitimate charge" on the memorandum. credit slips appears to have no connection with these eight cars or any transaction of plaintiff with the defendant.

The court would not permit the defendant to prove the construction and interpretation placed on the two telegrams by the subsequent conduct and declarations of the parties; that is, whether the plaintiff looked from the telegrams to the Hudson Motor Car Company for the price protection on these eight cars and not to the defendant, and that defendant was liable for it only in event it was paid to the defendant by the Hudson Motor Car Company. The many errors assigned raising this question were argued in brief together.

[2] The plaintiff had no contract with the Hudson Motor Car Company. Its contract was with the defendant. The telegrams were not sent by the Hudson Motor Car Company to the plaintiff, but were sent by the defendant to the plaintiff. The first telegram states: "New prices apply on all shipments and factory deliveries on and after February nineteenth stop will protect bona fide unfilled retail orders on hand close of business February eighteenth." Who will protect the plaintiff in bona fide unfilled orders? It was the person who signed the telegram, the defendant, who had a contract with the plaintiff, to whom the telegram was addressed. The other telegram clearly indicates also that the defendant will protect the plaintiff on bona fide retail orders on hand close of business May first. It states: "Protection will be granted on bona fide retail orders on hand close of business May first." It also states: "We cannot guarantee any orders will be protected against any future price change." The language of these telegrams is certain, the meaning is clear, and they are free from contradiction, uncertainty, and ambiguity. The court properly refused to let the defendant aid in interpreting them by proof of the subsequent conduct and words of the parties as attempted in this case. Boykin v. Bank, 72 Ala. 262, 270, 47 Am. Rep. 408; Twin Tree Lbr. Co. v. Ensign, 193 Ala. 113, 69 South. 525, headnote 3; Gadsden Ry. Co. v. Gadsden Land Co., 128 Ala. 510, 29 South. 549; Alexander v. Ala. W. Ry. Co., 179 Ala. 480, 60 South. 295.

The appellant insists that the court erred in including in the judgment the price protection on the Brummell car, the car sold by plaintiff to Mr. O. E. Brummell, because there is evidence that the trade on this car was pending and not finally closed until after receipt of the telegram of February 19th. The plaintiff informed the defendant of the pending trade with Brummell when the telegram came, the plaintiff also notified the agent of the defendant of the facts and he was advised by the agent to send it in and it would be allowed. The plaintiff made out the affidavit as to Brummell's car for protection price, mailed it to the defendant, and it was approved by the defendant, and sent by defendant to the Hudson Motor Car Company, and was by them approved. A credit memorandum slip was sent by the Hudson Motor Car Company for this car to the defendant amounting to $306.60. The number of the car was 34069. The auditor of the Hudson Motor Car Company testified the account of the defendant with this company, Hudson Motor Car Company, was credited on the books with price protection car No.—Hudson—34069, with amount of $306.60 which referred to credit memorandum slip number which contained the name of O. E. Brummell.

[3] The great weight of the evidence sustains the court in including in its judgment against the defendant the price protection of this car. The defendant knew the sale of it was pending before and closed after the telegram was received. The defendant's agent, knowing the facts, advised plaintiff to make the affidavit and send it to the defendant. The defendant with knowledge of the facts of the sale approved it; the defendant sent it to the Hudson Motor Car Company, and it was by them approved. Then the protection price, amounting to $306.60, was placed to the credit of the defendant on its account with the Hudson Motor Car Company. In justice and good conscience the plaintiff was entitled to recover this money from the defendant. 10 Michie, Dig. 63. The court under the evidence did not err in allowing plaintiff to recover the price protection on this car from the defendant.

[4] The defendant under the plea of set-off or recoupment offered to prove, and the court would not permit it, this:

"That the Herren Sales Company did not order out the number provided for in each of the schedules of the two contracts and that the difference in profits to the Reliance Auto Company on cars that would have been delivered had they taken them all would be $7,734.90, * * * that they did have the cars on hand and were ready and able to deliver at all times," and "that he expected the evidence to show that the Reliance Auto Company shipped and delivered to the local agents at Anniston all the cars that they called for in strict accordance with the terms of the contract, and offered to ship more, and that plaintiff refused to receive the cars, and the loss of profits to the Reliance Auto Company, by virtue of the failure of the Herren Sales Company to receive these additional cars, which they had at all times on their

floor and were ready and willing to ship, amounted to $7,724.90, during the period of and under the two contracts, from August 1919 to November 30, 1920."

There are four contracts in evidence—two made by defendant with the Herren Transfer Company, and two with the Burns-Herren Motor Company. There is evidence that Burns-Herren Motor Company succeeded to the rights of the Herren Transfer Company, and the Herren Sales Company, the plaintiff, after January 1, 1920, took over the business of the Burns-Herren Motor Company, "and the bills were made out and the invoices were made out" in the name of Herren Sales Company, and "all orders were sent into the Reliance Auto Company in the name of the Herren Sales Company."

Whether or not this evidence should have been allowed by the court to support the pleas of set-off or recoupment, involves the construction of sections 3 and 4, which appear in each contract. That part of section 3 applicable reads:

"3. The distributor agrees, subject to the ability of the Essex Motors (Hudson Motor Car Company) to manufacture and ship, and subject to any and all conditions beyond the control of either the distributor or the Essex Motors to ship to the dealer against sight draft drawn with bill of lading attached, the quantity and variety of cars, in the months and at the prices, f. o. b. Detroit, indicated in the schedule below."

The schedule referred to appears in all the contracts like this, only varying as to the number of cars and months, and in one contract it appears in this way:

| | Advertised Price. | Dealer's Net Price. | Aug. | Sept. | Oct. | Nov. | Total. |
|---|---|---|---|---|---|---|---|
| Touring car | $1,595 | $1,307.90 | 3 | 3 | 1 | 3 | 12. |
| Sedan | 2,250 | 1,845 | 1 | 1 | 3 | 1 | 4. |
| Cabriolet | | | 4 | 4 | 4 | 4 | 16. |

That part of section 4 applicable reads as follows:

"4. The obligation of the distributor under paragraph 3 is conditioned upon the dealer lifting such drafts within seven (7) days after arrival of cars at destination, and not changing the above schedule by reducing the number of cars to be shipped during any one month. But if the dealer should fail to take up the drafts within the seven (7) days period prescribed, or should instruct the distributor to cancel or advance to some future time any car scheduled for any one month, then the distributor is, at its option, released from any obligation to deliver the quantity of cars not promptly taken up or canceled."

The defendant, Reliance Auto Company, is called in each contract the "distributor," and the Herren Transfer Company in two contracts is named the "dealer," and the Burns-Herren Motor Company is named the "dealer" in two of the contracts.

If these sections have been construed by any court of last resort we cannot find it, and neither party in brief has cited us to it.

Under these sections the distributor agrees to ship to the dealer, against sight draft drawn with bill of lading attached, the quantity and variety of cars in the months indicated in the schedule. This obligation of the distributor is conditioned upon the dealer lifting such drafts within seven days after arrival of cars at destination and not changing the above schedule by reducing the number of cars to be shipped during any one month.

This agreement is binding on the distributor to ship all the cars in number and variety, each month, as shown by the schedule, if the dealer pays the purchase price draft within the prescribed time and does not reduce the number of cars to be shipped during any one month. If the dealer reduces the number of cars to be shipped during any one month and fails to pay the purchase price drafts for the cars within the time limit, this terminates the obligation of the distributor; this releases the distributor from the obligation to ship the cars according to the the schedule. It releases the distributor from the obligation in section 3. If the dealer should fail to take up the drafts within the 7 days' period prescribed, then the distributor is, at its option, released from any obligation to deliver the quantity of cars not promptly taken up or canceled.

If the dealer should instruct the distributor to cancel any car scheduled for any one month, then the distributor is at its option released from any obligation to deliver the quantity of cars not canceled. These sections of the contract, impliedly, if not expressly, give the right to the dealer to cancel any cars for any months in the schedule, but when this right is exercised by the dealer, the distributor is thereby clothed with the right, if it desires, to refuse to ship the cars ordered or not canceled for that month. Nothing is said in the sections requiring or binding the dealer to take any certain number of cars. If the dealer orders some and refuses to order all the cars in the schedule for any one month, then the distributor has the right to refuse to ship, if it desires, any cars in the schedule for that month; but if the distributor ships the cars ordered, he cannot recover damages for the cars the dealer refused to order or canceled for that month. These sections of the contract state the obligations of the distributor and declare his options and remedies.

Under the terms and conditions of the contract as they appear in these sections the court did not err in refusing to permit the defendant, under the set-off or recoupment pleas, to make the proposed proof hereinbefore set out in this opinion.

The record is free from error, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.