Headnotes By Editorial Staff
ENTRY
This cause and matter came on to be heard by the Board of Tax Appeals on separate appeals filed by the appellant, above named, under date of May 20, 1940, from corrected tax certificates made and issued by the tax commissioner under date of April 19, 1940, determining the amount of the taxable credits of the appellant for the tax years 1937, 1938 and 1939. And the case was heard by the Board of Tax Appeals upon said several appeals, upon the files of the tax commission and of the tax commissioner as its successor, relating to said assessments, upon the evidence which was offered and introduced on a hearing of the case and upon the arguments and briefs of counsel.
On consideration of the case as thus presented the Board of Tax Appeals finds that the appellant in listing its taxable credits for the tax years 1937, 1938 and 1939, set out in its tax returns for said several and respective tax years, among other things, its current accounts receivable and current accounts payable as of June 30, the close of the fiscal year, in each of the years immediately preceding the tax years above stated. In listing its accounts payable for and with respect to each of said tax years the appellant included in said item its liabilities for and with respect to certain state gasoline and liquid fuel taxes which the appellant company had set up on its books as liabilities and as accounts payable on and as of the close of each of the fiscal years *585 above noted. These tax liabilities for and with respect to each of said tax years, as the same were set up on the books of the company, were in amounts as follows: For the tax years 1937, gasoline taxes for road and street construction and maintenance under §§5527 and 5541 GC, $201,115.41; liquid fuel tax under §5542-2 GC, $68,385.19; gasoline taxes provided for by the law of Michigan, $234,542.53. (2) For the tax year 1938, Ohio gasoline taxes for road and street construction and maintenance, $186,508.00; Ohio .liquid fuel taxes, $63,028.28; Michigan gasoline taxes, $256,906.77. (3) For the tax year 1939, Ohio gasoline taxes for road and street construction and maintenance, $168,-982.41; Ohio liquid fuel taxes, $57,-213.64; Michigan gasoline taxes, $180,319.23; Ontario gasoline taxes, $443.20.
The tax commissioner on audit of the tax returns made by the appellant as aforesaid, disallowed and deducted from the stated amounts of accounts payable set out in said several tax returns, the above stated items of gasoline and liquid fuel taxes for each of said tax years with the result that the net amount of the taxable credits of the appellant for each of said years was substantially increased, which increase for each of the tax years here in question was reflected in a corrected tax certificate made and issued by the tax commissioner. From the action of the tax commissioner in disallowing said tax items as accounts payable the appellant filed with the Board of Tax Appeals an appeal for each of said tax years.
The taxes which the appellant set up as accounts payable as of the close of its preceding fiscal year in each of the instances above noted were those which accrued as obligations of the company on the receipt by it of gasoline and liquid fuel within a period of six weeks or two months prior to the close of such fiscal year; and, apparently, in each instance such taxes were payable by the company within a period of a few weeks after said date. So that if said tax liabilities as against the company had the character of “accounts payable” within the meaning of §5327 GC, they were current accounts payable within the purview of this section.
With respect to the question whether these tax liabilities or obligations of the company were current accounts payable which it could set up against its current accounts receivable for the purpose of determining its taxable credits under the provisions of §5327 GC, the appellant contends that each and all of these taxes were taxes on the consumer and not against the appellant as a “dealer”. As to this it may be observed with respect to the Ohio taxes here in question — whether, as contended by appellant, they are taxes on the consumer or, as indicated by the decision of the Su-. preme Court of this state in the case of Cincinnati v Oil Works Co., 123 Oh St 448, are taxes imposed upon the dealer — and with respect to the Michigan taxes, above noted, which are, apparently, consumers’ taxes, the primary obligation as to the payment of these taxes as between the States of Ohio and Michigan, respectively, and the appellant company, is on said company. And the question here presented is whether this obligation of the appellant company for the payment of these taxes has the character of an account payable within the purview and intent of §5327 GC. As to this we are of the view that the taxes here in question and the obligation of the appellant company with respect to the payment of the same are *586 not “accounts payable” of the company within the meaning of this section of the General Code. With respect to this question it is noted that “an ‘account’ is a general term which may cover any item of indebtedness by contract express or implied”. Twin Tree Lumber Company v Ensign, 193 Ala. 113, 118; Harris v Onstonto Company, 186 Ala. 484; Barker’s Creek Coal v Alpha-Pocahontas Coal Company, 96 W. Va. 700, 706; J. R. Rapple Company v Manitowak, 182 Wis. 141, 145. As to the question here presented, it is noted that in the case of West Virginia Pulp & Paper Company v Karnes, 137 Va. 714, which case was cited with apparent approval as to this question by the Supreme Court of this state in the case of Tax Commission of Ohio v The National Malleable Castings Company, 111 Oh St 117, 134-137, the Supreme Court of Appeals of the State of Virginia in the consideration of a tax act of that state providing that “the excess of bills and accounts receivable over bills and accounts payable” shall be taxed as capital of a corporation, held: “That tax bills due to the Federal Government were not included in the words ‘bills and accounts payable’ and could not be deducted from bills and accounts receivable in determining the capital of a corporation subject to taxation.” The court in its opinion with respect to the question there presented said:
“The property of the taxpayer which was assessed for taxation in the instant case consisted wholly of ‘bills and accounts receivable.’ This is a distinct kind of property, different from ‘stock on hand.’ ‘machinery and tools not taxed as real estate,’ ‘money on hand and on deposit,’ and ‘all other property of any kind whatsoever, including all * * * (other) demands and claims’ employed in the trade or business of the taxpayer. ‘Bills and accounts receivable’ are of course ‘demands’ or ‘claims;’ but, as appears from the express language of the statute, they are a peculiar kind of demands or claims, different from all other demands or claims ‘whatsoever.’ It is manifest from the terms of the statute that the ‘excess of bills and accounts receivable/ which is taxable thereunder as ‘capital/ is to be ascertained by deducting from the total thereof only the amount of ‘bills and accounts payable/ which are the same kind of demands or claims as ‘bills and accounts receivable,’ with the single exception that the latter are owing to (‘receivable’ by), and the former are owing by (‘payable’ by) the taxpayer. It is plain, therefore, that it -is not every kind of demand or claim owing by the taxpayer which the statute allows to be deducted from the total of his ‘bills and accounts receivable/ in order to ascertain the ‘excess thereof’, which is taxable as ‘capital’ but only such demands and claims owing by him as would be ‘bills and accounts receivable’ if they were owing to (‘receivable’ by), instead of being owing by (‘payable’ by) him.
“Now, as to the meaning of the terms ‘bills and accounts receivable’ and ‘bills and accounts payable;’ these terms have a well understood technical meaning. According to that meaning they embrace only contract obligations, express or implied. Blake’s Law Dictionary (2d ed.), pp. 16, 134; 1 Words and Phrases, p. 87; 1 Bouvier’s Law Dictionary, pp. 63, 243; 1 C. J. 730. As appears from these authorities ‘accounts receivable’ are contract obligations ‘owing to a person on open account;’ ‘bills receivable’ are all other contract obligations ‘owing to’ a person; ‘accounts payable’ are contract obligations owing by a person on *587 open account; and ‘bills payable’ are all other contract obligations owing by a person. Such obligations do not include taxes, State or Federal, as the latter are not contract obligations.”
In the application of the principle of law, above noted, as to the essential character of an “account payable” as this term is used in §5327 GC, and in other tax statutes of like kind, it may be observed that whether the gasoline and liquid fuel taxes here in question are taxes on the appellant as a dealer or are essentially taxes on the ultimate consumer of such products, an obligation for the payment of such taxes in the first instance is imposed upon the appellant, and such obligation is Imposed on the appellant company not by contract express or implied, but by some statute or administrative regulation or by both. In this view the gasoline and fuel tax liabilities set up by the appellant as accounts payable do not have the character of an account payable within the meaning of §5327 GC; and, moreover, tax liabilities of this kind are expressly excluded by this section from the sum of current accounts payable of the taxpayer which may be set off against its accounts receivable for the purpose of determining the net taxable credits of such taxpayer. The tax commissioner did not err in disallowing these items in determining the current accounts payable of the company for each of the tax years above noted; and in this respect the action of the tax commissioner is hereby affirmed.
Likewise included in the respective amounts of accounts payable listed by the appellant in its tax returns for the years 1937, 1938 and 1939, were the aggregate amounts of merchandise coupon books theretofore sold by the appellant company to the lessees of the filling stations and other places of business owned by the appellant for resale by such lessees to consumers, for the purpose of facilitating the sale of gasoline, oils, tires, and other automobile accessories which had been theretofore sold by the company to such lessees as independent operators, or for the purpose of facilitating the sale to the consumer of like products by a number of other subsidiary and associated companies engaged in the sale of merchandise of this kind. The aggregate amount of such items so included by the appellant in its said tax returns— which items were disallowed by the tax commissioner on audit of such tax returns — were as follows: For the tax year 1937, $33,220.00; for the tax year 1938, $25,071.00; and for the tax year 1939, $21,837.00.
It appears from the evidence in this case that after a merchandise coupon book of this kind has been sold for cash by the appellant company to one of its lessees, and after the same had been resold for cash by such lessee or operator to a consumer, the consumer could use the coupons in such book as cash for the purchase of gasoline, oils, tires, and other accessories from the lessee or operator from whom the consumer purchased the book, or such consumer could use the coupons in this particular book for the purchase of goods and merchandise of this kind from any one of the many other lessees engaged is the independent operation of filling stations and other places of the appellant company. Likewise, it seems, that by some arrangement between the • appellant company and the Pure Oil Company the coupons in this book could be used in the purchase of commodities of this kind at any Pure Oil station in the United States. After the coupons in any book so sold had been received by *588 any one of the appellant’s lessees or operators in exchange for merchandise sold to the consumer, such coupons were redeemable by the appellant company in cash paid or credited to the lessee or operator on surrender of the coupons for this purpose. Although on the facts thus appearing with respect to the sale of these merchandise coupon books, and with respect to the use and redemption of the coupons therein contained, it may be observed that on the sale by the appellant company of a coupon book of this kind the company incurred a contingent liability of a kind with respect to its obligation to redeem the coupons therein when such coupons had served their purpose and were surrendered to the appellant company by the operator who obtained the same from the consumer on the sale and purchase of merchandise, it is not apparent that this contingent liability of the appellant company with respect to the redemption of such coupons is predicated on any such contract or contractual relation as would give this contingent liability the character of an account passable as that term is used in §5327 GC. As to this it may be noted that although when the appellant company sells a merchandise coupon book to one of its independent operators — whether such book contains coupons in the aggregate amount of $5.00, $10.00 or $25.00 — the company may set up its contingent liability with respect to the redemption of the coupons contained in such book as an account payable, no contract or agreement express or implied is thereby made between the appellant company and the operator to whom the book is sold that the company will redeem the coupons in the book- for the operator purchasing the same; and this for the obvious reason that it cannot be known at that time whether the consumer to whom the book is resold by such operator will present the coupons therein contained for merchandise sold to him by this particular operator or by any one of many other operators selling goods and merchandise of the kinds above noted. In other words, the appellant company at the time it sells the coupon book of this kind to one of its operators has no means of knowing whether the detached and used coupons out of this book will be presented for redemption by the operator to whom the book was sold or by somebody else. Neither, under the principle under which contracts, between parties are sometimes sustained for the benefit of a third person, can it be said that a transaction of this kind between the appellant company and a particular operator could by mere implication create a right with respect to the redemption of the particular coupons in a person who is a stranger to the transaction who is not therein named or known. See Railroad v Bank, 54 Oh St 60, 69.
Speaking of “accounts payable” from an accounting standpoint the , following is said in Paton’s Accountants’ Handbook (2d ed.) 839 r
“In the narrowest usage this term may be restricted to trade creditors’ accounts, consisting primarily of liabilities created through the purchase of merchandise, materials, and supplies on account. In its broadest usage the term includes, in addition to trade accounts, virtually all unpaid bills or invoices, such as freight bills, water and light bills, telephone bills, advertising invoices, repair bills, and so on.”
*589 *588 Each of all of the several items noted in the language of the author here quoted, imports an express or *589 implied contract of a definite nature between ascertained parties giving rise to the liability which is set up by the party required to pay or otherwise satisfy such liability, as an account payable. We are not persuaded that the transactions in and by which the appellant company sells and accounts for the merchandise coupon books here in question, have the effect of creating accounts payable as against said company within the purview and intent of §5327 GC. For this reason and for the additional reason that the liability of the company with respect to the redemption of merchandise coupons sold by it is contingent in its nature, we are of the opinion that the tax commissioner did not err in disallowing the items here in question from the accounts receivable listed by the appellant in its tax returns for the tax years above referred to. See Black-Clawson Company v Evatt, 139 Oh St 100, 103. And in this and in all other respects the assessment orders of the tax commissioner complained of in said appeals are hereby affirmed.
I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation, this day taken with respect to the above matter.
HARRY J. ROSE, Secretary.