174 So. 759

### HOLT v. LONG et al.

3 Div. 208.

Supreme Court of Alabama.

May 6, 1937.

Rehearing Denied June 17, 1937.

A. A. Carmichael, Atty. Gen., B. W. Simmons, Asst. Atty. Gen., L. H. Ellis, of Columbiana, E. C. Boswell, of Geneva, and H. L. Anderton, of Birmingham, for appellees.

Mooneyham & Mooneyham, of Montgomery, for appellant.

GARDNER, Justice.

It is the theory of the State Tax Commission, accepted by the court below, that the word "flour," found in subdivision j of section 4 of the Sales Tax Revenue Act of February, 1937 (Acts 1936–1937 (Ex.Sess.) p. 129), dealing with the matter of exemptions, should be construed as having reference to plain flour only, and as excluding all other brands, such as self-rising flour, pancake flour, and the like.

The bill avers and the answer admits "that flour is known by and sold to the public as plain flour, self-rising flour, pancake flour, cake flour, buckwheat flour," and so forth, with the constituent elements of each. The basic element of each is flour, and the small percentage of added ingredients varies according to the secret formulas. Each brand is plainly marked, and the prices vary according to the quality of flour used and the ingredients added.

It appears also, undisputedly, that 75 to 80 per cent. of the flour sold and consumed by the people of Alabama is self-rising flour in some form, notwithstanding plain flour costs a "little less" than the other brands.

We recognize the general rule that exemptions from taxation must be strictly construed in favor of the taxing power. State v. Tuscaloosa Cotton Seed Oil Co., 208 Ala. 610, 95 So. 52. But this rule calls for no strained construction, adverse to the real intention of the Legislature. 61 Corpus Juris 396. And when such real intention can be gathered from the act itself, arbitrary rules are not of controlling importance. Nettles v. Lichtman, 228 Ala. 52, 152 So. 450; Long v. Poulos, ante, p. 149, 174 So. 230.

When the language is plain and unambiguous, the meaning obvious, there is no room for construction. " 'Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.' * * * 'When their language is plain, no discretion is left to us. We have no right to stray into the mazes of conjecture, or to search for an imaginary purpose.' " State v. Praetorians, 226 Ala. 259, 146 So. 411, 413.

So much of this subdivision of the exemption section of the act as is here pertinent reads as follows: "(j) Amounts received from the sale of sweet milk, buttermilk, cornmeal, flour, dry salt sides, salt fat backs, plates, bellies, sugar and coffee."

As to the history of this exemption, it appears that flour was inserted in the exemption section by an amendment in the House as follows: "Amend Section 4 of 'Substitute for H.B. 179 by adding at the end thereof the following provisions: Amounts received from the sale of meal, flour, side meat, coffee and sugar.' "

But after the passage of the bill as thus amended by the House, the bill was further amended, and, as finally signed by the Governor, appears in its present form as quoted above.

Counsel for the tax commission lay some stress upon the ancient maxim noscitur ex sociis—the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it—a maxim given frequent application in this court. O'Neal v. Turner, 230 Ala. 24, 158 So. 801; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co., 223 Ala. 385, 136 So. 800; Nettles v. Lichtman, 228 Ala. 52, 152 So. 450.

But we think the above-noted history of this amendment refutes the theory that this maxim can avail the commission in the instant case. As originally framed, the amendment was in broader language, as is illustrated by the use of the word "meal," which might include oatmeal and the like, and the words "side meat," which were changed to words more definite. So the lawmaking body, desiring to avoid confusion and uncertainty by the use of broader and more inclusive language, changed the amendment so as to more minutely define and narrow the scope of the exemption as to these articles. But as to flour, it remained unchanged.

It was a matter of common knowledge, and the bill discloses, that flour was sold to the public under varying brands, yet no effort was made to specify any particular brand. One of these brands is known as and marked self-rising flour, used by a great majority of the people of this state. A customer applying to his groceryman for a sack of flour would very naturally be met with the inquiry—What brand is desired? These are matters generally known and understood, and of which the courts may take judicial knowledge, that is, that flour is sold to the public under varying brands. 23 Cor-

pus Juris 76. This the Legislature presumably knew, and, so knowing, left in the amendment the all-inclusive word "flour," though at the same time taking the precaution to narrow the scope of the exemption amendment as to other articles. Self-rising flour is none the less flour because it contains some small percentage of other ingredients, such as salt, soda, and phosphate, and likewise as to other brands of flour named in the bill.

To construe the exemption as contended by the commission, it is necessary to prefix the word "plain" to the word flour. But, as observed in State v. Praetorians, supra, "the courts must confine themselves to the construction of the law as it is, and not attempt * * * to supply defective legislation, or otherwise amend or change the law under the guise of construction."

As the statute here in question is plainly written, these various brands of flour are embraced within the meaning of the word "flour," and to construe it otherwise as having application only to plain flour, is to change the statute under guise of construction, an infringement upon the legislative prerogative.

By way of further illustration, reference may be made to the word "sugar," likewise named in the same connection as exempt from the tax. It is generally known and understood that there are varying brands of sugar, for instance, brown sugar and white sugar, and a varying price as to each. We know of no theory of construction that would justify the insertion of the word "brown" or "white" as qualifying the word "sugar." The Legislature has made no such distinction, and nothing in the language or history of the act would give justification for any such distinction to be made by the court. To so hold would be nothing short of judicial legislation under the guise of interpretation.

So in the instant case, we can find nothing either in the language of the act, its history, or purpose indicating the legislative intent to narrow the scope and meaning of the word "flour" in this exemption amendment, and, so concluding, it is our plain duty so to declare. We can only learn what the Legislature intended by what it has said, and have no right "to stray into the mazes of conjecture or search for an imaginary purpose."

These views are not in accord with those prevailing in the court below. It results,

therefore, that the decree must be reversed, and one here rendered answering in the affirmative the inquiry of the amended bill.

Reversed and rendered.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.