205 So.2d 516

## CANAL INSURANCE COMPANY

v.

## Aaron C. STIDHAM et al.

### 6 Div. 380.

Supreme Court of Alabama.

Sept. 14, 1967.

Rehearing Denied Jan. 11, 1968.

Bibb Allen, London, Yancey, Clark & Allen, Birmingham, for appellee Stidham.

John Lair, Birmingham, for appellee Baggett.

W. J. Sullivan, Jr., and Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellant.

HARWOOD, Justice.

This is an appeal entered in a declaratory judgment proceeding filed to determine an insured's coverage under an automobile casualty policy. The facts were stipulated and show the following.

The Canal Insurance Company, respondent below, issued an automobile casualty policy to Aaron Stidham. The effective dates of the policy were 28 November 1961 through 28 November 1962. This policy was issued pursuant to the Alabama Motor Vehicle Responsibility Act, was certified to by the Director of Public Safety, and the issuance of the policy was for the purpose of inducing the Director of Public Safety to issue a driver's license to the insured Stidham. Sections 74(42) and 74(83), Title 36, Code of Alabama 1940.

In the policy the automobile covered was described as an 1957 Oldsmobile, the model, body type, and motor number being set forth.

This Oldsmobile was involved in an accident on 21 June 1962, was totally destroyed and was sold for salvage.

On 13 July 1962, Stidham purchased a Harley-Davidson motorcycle. On 28 July 1962, Mack Elbin Baggett was riding as a passenger on the motorcycle being operated by Stidham, when the motorcycle was involved in an accident (type not shown) and Baggett was injured.

This accident was reported to Canal which declined coverage under their policy, and refused to handle the defense of any litigation on the grounds that there was no coverage for Stidham under the terms of the policy as to the motorcycle.

In 1963, Baggett filed an action against Stidham for damages resulting from the motorcycle accident. The suit was tendered to Canal which again refused to handle it for the reasons above set forth. The Baggett suit resulted in a judgment in favor of Baggett and against Stidham in the amount of $7,000 and costs.

After a hearing in the present declaratory action, the court entered a decree, which in parts pertinent to this review reads:

"Giving full scope to the opinion of Baltimore Insurance Company vs. Reynolds, [253] Ala. [104]; 43 So. (2nd) 1, and the similarity of language between the "Automobile Defined" sections of the policy in the present case and in that decision, the Court is of opinion that complainant is entitled to relief.

"It is accordingly, ORDERED, ADJUDGED, DECLARED AND DECREED by the Court as follows:

\*    \*    \*    \*    \*    \*

"2. The policy of insurance issued to complainant Stidham by respondent Canal Insurance Company was in force and effect on to-wit: July 28th, 1962 and said Insurance Company is legally obligated to extend the benefits of coverage to said complainant, and to pay the judgment and costs prescribed in the bill, together with an attorneys' fee of $750.00, as set forth in paragraph # 10 of the stipulation of this cause.

"3. That in view of the granting of full relief to the complainant it is unnecessary that any relief be granted to cross-respondent Mack Elbin Baggett and relief under his cross-bill is hereby denied."

Canal perfected its appeal from this decree and judgment.

In Baltimore American Ins. Co. of New York v. Reynolds, 253 Ala. 104, 43 So.2d 1, which the lower court referred to and considered decisive of the present litigation, the policy being considered was an "Automobile Dealers' Open Policy Monthly Reporting Form." The policy had been issued to a used car dealer, who had taken in a motorcycle in an automobile trade. The motorcy-

cle was stolen from the dealer's lot where it was kept for sale. The insurer refused liability under the policy claiming a motorcycle was not within its coverage.

Section 1 of the policy provided:

"The policy designated below covers automobiles owned by the insured and held for sale or used in repair service, or as demonstrators * * *"

Section 10 of the policy, defining "automobile" contained the following paragraph:

"When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each *and a motor vehicle* and a trailer or trailers attached thereto shall be held to be separate automobiles as respects limits of liability, including any deductible provisions." (Italics ours.)

The lower court adjudged that the motorcycle was within the terms of the policy being considered.

On appeal this court affirmed, and in its opinion observed:

"We think it not unreasonable, from a consideration of the last above-quoted provision, that the policy may be construed as including *'motor vehicles,* trailers and semi-trailers' within the term 'automobiles' in the insurance coverage. The term 'motor vehicle,' of course, includes a motorcycle, 60 C.J.S., Motor Vehicles, §§ 6, 1a, pages 115, 110, * * *" (Italics ours.)

In reference to the coverage provisions of Section 1 of the policy then being considered, this court stated:

"Had there been no other qualifying or defining terms of the policy then, under the strict letter of the policy, without considering other circumstances in connection with its processing and maintenance, by the weight of authority a motorcycle would not have been within its coverage." (Numerous authorities omitted.)

However, applying the basic principle that provisions of doubtful import in an insurance policy will be resolved in favor of an insured, it was concluded that the ambiguity created in the terms of the policy by Section 10, supra, defining "automobile" as including a "motor vehicle," a motorcycle, being a motor vehicle, was deemed as included in the definition of an automobile.

We look now to the policy involved in the present suit to determine if a motorcycle is to be deemed an automobile, either specifically or because of ambiguities in the verbiage of the policy.

The policy shows that the coverage was for a specifically designated and described automobile, a "1957 Oldsmobile."

Section 1 of the policy provides:

"Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Section IV of the policy defines the word "automobile" as used in the policy as follows:

"(1) * * * the motor vehicle or trailer described in this policy; * * *" (This clearly can only mean the Oldsmobile automobile.)

"(2) Trailer—a trailer not described in this policy, if designed for use with a private passenger automobile * * *" (This section has no application in the present suit.)

"(3) Temporary Substitute Automobile—" (This section pertains to an "automobile" being temporarily used by the insured as a substitute for the "described automobile" and has no application in this suit.)

"(4) Newly Acquired Automobile—an *automobile*, ownership of which is acquired by the named insured * * * if (1) it replaces an *automobile* * * * covered by this policy, * * *" (Emphasis ours.)

"Under division 2 of Coverage C, the word 'automobile' means a land motor vehicle or trailer not operated on rails or crawlertreads, but does not mean: (1) a farm type tractor * * * except while actually upon public roads, or (2) a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle."

In connection with this last provision of Section IV, it is to be noted that division 2 of Coverage C provides for payment of medical benefits to the insured for injuries resulting from an injury caused by accident while upon, or entering or alighting from, or being struck by an automobile.

Thus the effect of the last provision of Section IV, insofar as payment of medical benefits to the insured is concerned, where his injuries result from entering or alighting from an automobile, or being struck by an automobile, is to enlarge the definition of the word "automobile" to include a "land motor vehicle"; which would include a motorcycle.

■ However, such enlargement of the term "automobile" is applicable only when considering whether medical benefits are payable to the insured when struck by an "automobile." It cannot rationally be deemed to enlarge the term "automobile" as used in the other sections of the policy defining the term "automobile" and must be restricted to injuries suffered by the insured when struck by an automobile or "a land motor vehicle."

Further, Section IV(b) (the section defining the term "automobile"), a "Private Passenger Automobile" is described as meaning "a private passenger, station wagon, or jeep type automobile," and includes any automobile the purpose or use of which

is stated in the declaration as "business and pleasure." The purpose of the use of the Oldsmobile was designated in the declaration as being for business and pleasure.

Thus, in the policy now being considered, the coverage is only for damages resulting from the operation of insured's "automobile" except as to payment of medical benefits to the insured where the concept of "automobile" is extended.

■■ When the verbiage of an insurance contract leaves no doubt of the intention of the parties, the rule that the contract, if ambiguous, must be construed favorably to the insured, does not apply. Union Cent. Relief Ass'n. v. Johnson, 198 Ala. 488, 73 So. 816. And where the parties have reduced their agreement to writing, the writing, in the absence of fraud or mistake, is the sole expositor of the transaction and the agreement of the parties. A court cannot, under the guise of construction, provide a new and different contract for the parties. Joseph v. Hopkins, 276 Ala. 18, 158 So.2d 660.

■ Words employed in an insurance contract, or any other contract for that matter, are to be construed in their natural and usual import. Home Ins. Co. of New York v. Trammell, 230 Ala. 278, 160 So. 897.

In common parlance, and the common understanding of people, the word "automobile", and particularly a "private passenger automobile" means a four wheel vehicle propelled by a motor. It would indeed torture the commonly accepted concept of an "automobile" to conclude that such designation would include a "motorcycle" which is commonly thought of as a two wheel motor propelled vehicle. See note in 38 A.L.R. 2d at p. 882, wherein numerous cases holding to this effect have been collated.

The use of the term "motor vehicle" in the policy considered in Baltimore American Ins. Co. of New York v. Reynolds, supra, in the provision defining "automobile" distinguishes that policy from the one now

being considered where such term does not appear in the defining provision, and where from all its terms it is clear that the coverage of the policy was directed toward the insured's "automobile." The conclusion of the lower court that Baltimore American Ins. Co. of New York v. Reynolds, supra, is decisive of the present suit is not supported upon an analysis and comparison of the policy in that case with the policy now being considered.

■ We hold that the policy now being considered insured against damages and liability arising from the operation of insured's automobile and did not cover damages arising from the operation of his motorcycle.

Counsel for appellee argue that even if a motorcycle not be considered an automobile under the provisions of the policy, nevertheless since the policy was issued pursuant to our Motor Vehicle Safety-Responsibility Act (Secs. 74(42) through Sec. 74(83), Title 36, Code of Alabama 1940) wherein the term "motor vehicles" is used throughout, the term "automobile" as it appears in the policy must be construed as meaning "motor vehicle."

Counsel for appellee strenuously contends that American Southern Ins. Co. v. Dime Taxi Service, 275 Ala. 51, 151 So.2d 783, 4 A.L.R.3d 611, is supportive of this contention. In said case, as in the present case, the policy had been issued and certified by the Director of Public Safety for the purpose of inducing the issuance of a driver's license to the insured. The policy was an operator's policy of liability insurance covering non-owned automobiles, and contained a provision making a final judgment against the insured a condition precedent to liability under the policy. The insurer filed a plea in abatement based on this provision. The lower court held the plea insufficient and this court approved such ruling.

The basis of such approval was that the Alabama Financial Responsibility Act is for the benefit of the public, particularly that portion of the Act requiring a certificate of insurance to re-instate a driver's license. The Act does not provide that a judgment against the insured be a condition precedent to liability under a policy. It was stated:

"The Alabama Motor Vehicle Financial Responsibility Act, and the extent of liability which it imposes, is as much a part of the policy as if it were written into it, and no private understanding or provisions can alter, modify, limit or abrogate that liability."

It must be remembered that the court was considering a provision that attempted to impose restrictions below those required by the Responsibility Act, whereas the provision of the policy now being considered conferred benefits over and above the requirements of the Responsibility Act. This distinction renders the holding in *Dime Taxi Service*, supra, inapplicable to our present consideration.

The present policy is an owner's policy of liability insurance.

Section 74(62) (b), 1 and 2 of the Act provide that such policy:

"* * * shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

"2. Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle * * * subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $5,000 because of bodily injury to or death of one person * * * $10,000 because of bodily injury to or death of two or more persons * * *"

In the policy now being considered the coverage of the policy was for an automo-

bile specifically designated and described as being a 1957 Oldsmobile, with body type and motor serial number set forth.

Paragraph (g) of Section 74(62) of the Act sets forth:

"Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this subdivision. With respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section."

The insuring agreement in the present policy applying to newly acquired "automobiles" (IV(a) (4)) provides for a coverage additional to the coverage specified and required for a motor liability policy under the provisions of our Motor Vehicle Safety-Responsibility Act, supra. The act therefore, by its very terms, does not apply to the additional coverage for newly acquired "automobiles."

Paragraph IV(a) (4) of the policy sets forth in plain language the coverage relative to newly acquired automobiles, i. e., an "automobile" which replaces an "automobile" owned by the insured and described in the policy. This additional coverage is not required by any of the provisions of the Motor Vehicle Safety-Responsibility Act. It is to be construed without resort to the said Act under the facts of this case. Lofquist v. Allstate Ins. Co., 263 N.C. 615, 140 S.E.2d 12; Howell v. Traveler's Indem. Co., 237 N.C. 227, 74 S.E.2d 610.

So construed, the conclusion is necessitated that the policy now under consideration clearly discloses by its language that the policy covered only the Oldsmobile automobile described in the policy, and, insofar as this case is concerned, any newly acquired "automobile." It did not cover a newly acquired motorcycle.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and COLEMAN, JJ., concur.