234 So.2d 573

**C. D. BABCOCK and W. J. Gordy**

v.

**Paul SMITH and Mary E. Smith.**

**5 Div. 887.**

Supreme Court of Alabama.

March 26, 1970.

Rehearing Denied May 15, 1970.

Robert S. Lamar, Jr., Ball & Ball, Montgomery, for appellants.

Alton, Curlee & Leavell, Montgomery, for appellees.

McCALL, Justice.

This case involves the right of the appellants to foreclose a mortgage, and the construction of two leases, on the mortgaged real property, cross-delivered between the parties. The facts are substantially as follows:

On August 31, 1962, the appellees and the appellants contemporaneously executed and delivered to each other, as the particular transaction required, the following instruments in writing, namely:

1. The appellants lent the appellees $15,000 and took in return their promissory note and mortgage on real property. The principal and interest thereunder are payable in one hundred and twenty consecutive monthly installments of $166.65 each, commencing on the 4th day of October, 1962, and continuing on the 4th day of each month thereafter until paid in full. A subsequent provision is that the mortgagors, being engaged in the operation of a motor vehicle gasoline service station and purchasing their petroleum products from the mortgagees, may pay one and one-half cents per gallon of gasoline in addition to its regular cost, and thereafter, on the 30th day of December and 30th day of June of each year, supplement these amounts so as to equal the amounts due under the mortgage for the preceding six month period.

2. The appellees executed and delivered their written lease, hereafter called the prime lease, demising and leasing to the appellants so much of the mortgaged premises as is necessary for the operation of a gasoline filling station for a monthly rental of $166.65. The lease is for a term of ten years, commencing on the 4th day of September, 1962, and ending on the 3rd day of September, 1972. In this lease, the appellees license, consent and permit the appellants, as lessees, to maintain and operate a gasoline filling station on the premises and grant them 30 days after termination of the lease to remove their improvements and equipment therefrom. The appellees, as

lessors, agree to pay all taxes and assessments against the premises, the building, and their equipment. The appellants are responsible for the taxes on their equipment. The appellees further agree not to compete with the appellants in the gasoline filling station business and to make all repairs to and maintain the service station, with the exception of the service station equipment placed thereon by the appellants. While the lease to maintain and operate a gasoline filling station on the demised premises would ordinarily carry with it the right of possession to the premises, King v. Reynolds, 67 Ala. 229, the appellants did not go into possession, but with the appellees' permission, painted the building a different color, painted over the gasoline pumps and changed the emblems to Phillips Sixty-Six.

3. The appellants executed and delivered to the appellees a Dealer Lease and Agreement for Purchase and Sale of Petroleum Products, hereafter called the leaseback, whereby, for the same monthly rental of $166.65, the appellants who are referred to as "Seller," lease back to the appellees, called the "Dealer," the same real property described in the mortgage for ten years, commencing on the 4th day of September, 1962, and ending on the 3rd day of September, 1972. The Dealer, appellees, continued in actual possession of the real property including the gasoline filling station, never at any time having parted with possession or with the operation of the filling station. Pertinent provisions of this lease-back are that it covers the operation of a motor vehicle filling station on the leased premises, with the Dealer agreeing to purchase all petroleum products sold there from the Seller. The Dealer retains possession of the leased premises, but failing to operate the filling station or to purchase all petroleum products from the Seller, agrees to surrender the same to the Seller upon demand, and the Seller may then use and occupy the premises or sub-let for the purposes for which the lease was made, agreeing to pay the $166.65 per month as rental

in accordance with the prime lease from the appellees. The Seller agrees to place gasoline pumps and storage tanks on the premises for the sale and dispensing of petroleum products purchased from the Seller. The Seller agrees to keep an adequate supply of petroleum products in the storage tanks or other places of storage on the premises, provided the Seller will not be liable for failure to furnish petroleum products where such is due to the Seller's inability to obtain the same from its source of supply. The Seller agrees to sell at the established major dealer tank wagon prices which the Dealer agrees to pay for in cash upon receipt of said petroleum products. The Dealer, as the owner of the premises, consents to the installation and maintenance of this equipment and assures the Seller the right to remove it from said premises. This instrument further provides that the Seller is interested only in the increased volume of wholesale sales of petroleum products and securing payment of its sale price to the Dealer. Neither the Dealer nor his employees are to be deemed or to be construed to be employed by or agents of the Seller and the Dealer is not to permit any of their employees to represent themselves as agents or employees of the Seller. The Dealer is required to carry his own insurance and pay taxes and governmental assessments against the leased premises and the Seller is required to pay all taxes and assessments against the pumps, tanks and equipment, provided, however, so long as the Dealer is in possession of the premises he is required to take out all licenses for the operation of the business in his own name and to pay all license fees and privileges, occupation, sales, income, social security or excise taxes of any character whatsoever. The dealer is required to keep the plumbing and gasoline pumps protected and not to damage, deface, alter or change or remove any fixture signs or trademarks.

The appellants and appellees operated under these three instruments with the appellees paying one and one-half cents per gallon on their gasoline purchases in ad-

dition to cost, as well as other payments from time to time, all of which were credited on their mortgage indebtedness to the appellants. The monthly rental due by the appellants under the prime lease was set-off by the rental due by the appellees under the lease-back. The appellants sold the appellees Phillips Sixty-Six gasoline and petroleum products under a dealership or distributorship arrangement with that petroleum company, until August 28, 1965, when the appellants lost their Phillips Sixty-Six franchise. When this occurred, the appellants requested the appellees to accept Sinclair products in the place of Phillips Sixty-Six. They agreed, but refused to sign any dealership agreement or any other type of agreement with Sinclair. Sinclair sold their petroleum products to the appellees, collecting one and one-half cents per gallon of gasoline in addition to cost which it remitted to the appellants for the account of the appellees' mortgage debt. Sinclair changed the pumps and emblems on the appellees' premises to their own kind and repainted the building. These changes were made without objection by the appellees.

Under a contract of sale with Sinclair, made on the 28th of August, 1965, the appellants sold them all of their trade fixtures and personal property, including that on the premises of the appellees, they agreed to exercise their best efforts to secure the execution of a Dealer Agreement between Sinclair and the appellees, they sold, transferred and conveyed to Sinclair their business good will, they agreed not to engage in a competing business for five years, for which Sinclair agreed to pay the appellants $1000 and one cent a gallon on all gasoline sold and delivered by Sinclair to any of seven Open Dealer Accounts, listed in the contract, which includes that of the appellees, for three years, but not to exceed $6,270, including the $1000, and finally, the appellants gave Sinclair the option and privilege to cancel and rescind the contract of sale upon certain contingencies. Appellants' lease-back to the appellees was not sold, transferred or assigned by them under this contract to Sinclair.

In addition to the cost, the appellees paid the one and one-half cents per gallon, but no more toward liquidating their mortgage indebtedness. These payments only satisfied the interest on the mortgage debt and appellees fell in arrears. It appears that this precipitated the foreclosure proceeding by the appellants which resulted in this injunction suit.

Utilizing to the greater extent the language employed by the trial court in the relevant parts of its final decree, the court found and held that the lease-back was modified by the mutual assent of the parties and their subsequent conduct so as to substitute Sinclair as a new party to the lease-back, in place of the appellees, and so as to change the compensation to be received by the appellants from the amount under the lease-back of $166.65 per month to one cent per gallon of gasoline sold by Sinclair at the station operated by the appellees; that Sinclair has been in possession of the premises of the appellees since August 28, 1965, with the consent of the appellants, and as their sub-tenants, under this modified agreement, and that the appellees have operated the filling station as the agents of Sinclair for the benefit of the appellants. The court charged the appellants with the accrued monthly rent of $166.65 under the prime lease from August 28, 1965, without the benefit of set-off by reciprocal rents from the appellees under the lease-back. The court did not hold that the lease-back had been terminated or abandoned by mutual assent of the parties, but had been modified.

Upon a consideration of these findings and the court's holding, we conclude that the learned trial judge misconstrued the contractual negotiations between the appellants and Sinclair and their effect upon the lease-back between the appellants and the appellees.

We cannot agree that the legal effect of the contract between the appellants and Sinclair worked a substitution,

in the lease-back, of Sinclair for the appellees. There is no evidence that Sinclair, who is not a party to this suit, bound itself to accept these contractual obligations or that it ever went into possession of the leased premises. Appellee Smith testified that he held possession of the premises and never gave it up. Sinclair bought the pumps and equipment at the station and the appellees permitted Sinclair to repaint and display its signs and emblems about the station, but Sinclair did not go into possession and operate the filling station through the appellees, so far as we can find from the evidence. In fact, appellee Smith testified that he bought his gasoline from Sinclair to sell. There is no evidence that Sinclair agreed to pay the appellants one cent on the gallon as rent for the premises. Under appellants' contract of sale with Sinclair, Sinclair agreed to pay the appellants one cent per gallon on sales of gasoline to seven filling stations as part consideration for an agreement not to engage in a competing business for five years, and not for rent. Nor can we find from the evidence where an agency relationship was established between Sinclair, as principal, and the appellees, as agents.

Nor do we find evidence of mutual assent of the parties to modify the lease-back in the manner decreed by the trial court. Any subsequent conduct of the parties in supposed observance of its terms, cannot be considered by us as aids in its construction. Twin Tree Lumber Co. v. Ensign, 193 Ala. 113, 119, 69 So. 525; Gadsden & Attalla Union Ry. Co. v. Gadsden Land & Improvement Co., 128 Ala. 510, 518, 29 So. 549; Southern Ry. Co. v. Louisville & Nashville R. R. Co., 241 Ala. 691, 4 So. 2d 400.

We think the holding that the lease-back was modified in the manner found by the trial court in its final decree, was not supported by the evidence and was tantamount to making a new and different contract for the parties, including Sinclair, who was not a party to this suit, but which binds and obligates it to considerable extent.

In Springdale Gayfer's Store Co. v. D. H. Holmes Co., 281 Ala. 267, 277, 201 So.2d 855, 865, this court said:

"When the parties reduce their agreements and obligations to writing, the writing, in the absence of mistake or fraud, is the sole expositor of the transaction and intention of the parties; and a court cannot, under the guise of construction, provide a new and different contract for the parties. Joseph v. Hopkins, 276 Ala. 18, 22, 158 So.2d 660."

■ The terms of the written contract here involved, the lease-back, are clear and unambiguous. This being the case, the determination of its meaning is a matter of law for the court to decide, unaided by extrinsic evidence. Air Conditioning Engineers v. Small, 259 Ala. 171, 65 So.2d 698; Foster & Creighton Co. v. Box, 259 Ala. 474, 66 So.2d 746; Travelers Insurance Co. v. Kernachan, 283 Ala. 96, 214 So.2d 447; Dunlap v. Macke, 233 Ala. 297, 171 So. 721; McClendon v. Eubanks, 249 Ala. 170, 30 So.2d 261

This court aptly observed in Hattemer v. State Tax Comission, 235 Ala. 44, 46, 177 So. 156, 158, as follows:

"When language is plain and unambiguous, the meaning obvious, there is no room for construction. 'Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.' Or, as has been said, in such cases, the courts 'have no right to stray into the mazes of conjecture or to search for an imaginary purpose.' Holt v. Long, 234 Ala. 369, 174 So. 759, 760."

■ While the appellate court will not ordinarily disturb findings of fact made by the trial court after a hearing ore tenus in open court, unless plainly erroneous,

this court will reverse where the trial court erroneously applies the principles of law involved. St. Clair Industries, Inc. v. Harmon's Pipe & Fitting Co., 282 Ala. 466, 213 So.2d 201.

For the reasons stated, we think that the appellees should be charged with the accrued and unpaid amount of the monthly installments due by them on the mortgage indebtedness, and unless paid forthwith, the appellants should be permitted to proceed with foreclosure, and, that the amounts due the appellees by the appellants, under the prime lease, should be set-off by the identical amounts due to the appellants by the appellees, under the leaseback, without benefit of reduction brought about by the trial court's finding and final decree in this respect.

 In our opinion, the trial court erred in permitting the five character witnesses, to testify over the timely objections of the appellants' attorney that the appellee, Paul Smith, had a good general reputation, a good general reputation for truth and veracity, and a good general reputation for fair dealing and honesty.

The appellants had not impeached, or attempted to impeach, the character or the testimony of Paul Smith, either as a party or as a witness in any regard by the introduction of evidence of bad character on his part, or by any statement allegedly made by him out of court, contradictory of his testimony on the trial; nor was his character or reputation involved as an issue on the trial of the case in any manner. Rather than his character and reputation being involved, we point out that this is primarily a case involving the right of the appellants vel non to foreclose a mortgage which appellees had executed on their real property. The mere fact that Paul Smith's testimony was in conflict with that of the two appellants, and that appellants denied some of the sworn allegations of the bill of complaint in their answer, did not authorize proof of his good character. McCullars v. Jacksonville Oil Mill Co., 169 Ala. 582, 53 So. 1025; Hodges v. Davis, 199 Ala. 685, 75 So. 300; Starks v. Comer, 190 Ala. 245, 67 So. 440; Dickson v. Dinsmore, 219 Ala. 353, 122 So. 437; Phillips v. Ashworth, 220 Ala. 237, 124 So. 519; Hancock v. Hullett, 203 Ala. 272, 82 So. 522; Baggett v. State, 250 Ala. 413, 34 So.2d 688.

 The appellants offered into evidence the deposition of the adverse party, the appellee, Paul Smith, taken pursuant to Act No. 375, Acts of Ala., Regular Session 1955, p. 901 et seq., as amended, now found in Tit. 7, §§ 474(1) through 474(18), Code of Alabama, Recompiled 1958. Under § 474(4) (b) Tit. 7, of this statute the deposition of a party "may be used by the adverse party for any purpose." In our opinion, the trial court erred in sustaining the appellees' objection to the introduction of this deposition. It should have been admitted. Air Engineers Inc. v. Reese, 283 Ala. 355, 217 So.2d 66; Harrison v. McCleary, 281 Ala. 87, 199 So.2d 165; Dunahoo v. Brooks, 272 Ala. 87, 128 So.2d 485.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, COLEMAN, and BLOODWORTH, JJ., concur.