272 So.2d 575

**WINN–DIXIE MONTGOMERY, INC.,**
a corporation,

v.

**MIDFIELD PARK, INC., a corporation, and
The Great Atlantic and Pacific Tea
Company, Inc., a corporation.**

**SC 38.**

Supreme Court of Alabama.

Jan. 11, 1973.

Rehearing Denied Feb. 8, 1973.

1

Stone, Patton & Kierce, Bessemer, for appellee, Midfield Park, Inc.

Reid B. Barnes and Lawrence B. Clark, Birmingham, for appellee, The Great Atlantic & Pacific Tea Co., Inc.

James L. North, Birmingham, for appellant.

BLOODWORTH, Justice.

Cross-complainant Winn-Dixie appeals from a decree sustaining demurrers of cross-respondents Midfield Park and A & P to its amended cross-bill and dismissing the same with prejudice. Winn-Dixie contends on this appeal that it alleged all matters necessary to show a breach of a restrictive covenant and that the trial court erred in sustaining the demurrers to the amended cross-bill.

Both appellees, Midfield Park and A & P, have moved to dismiss the appeal. Additionally, these appellees assert that the restrictive covenant does not bind Midfield Park as lessor and that the restrictive covenant does not bind A & P as tenant of Midfield Park. Appellees argue that, by its very terms, the covenant limits only "* * * heirs, executors, administrators, assigns and successors in title * * *."

It appears that in 1957, Midfield Park entered into a lease agreement with Winn-Dixie's assignor. The assignor leased the premises at 34 Phillips Drive in the Midfield Park Shopping Center in Midfield, Alabama. In 1964, the lease was assigned to Winn-Dixie (then known under a different name). In 1967, the lease was amended and modified.

The restrictive covenant in the lease agreement reads as follows, viz:

"18. Lessor hereby warrants that its heirs, executors, administrators, assigns and successors in title during the term of this lease or any options herein granted will not lease, rent, occupy or permit to be occupied, or sell without a covenant prohibiting their use or occupancy as a store for retail business such as that of the Lessee, any premises owned or leased by it or its legal representatives, not now occupied as such a store within a distance of 1,000 feet from the premises hereby demised, and it is agreed between the parties hereto that this covenant shall run with the land. In the event of a breach of this covenant, Lessee shall be entitled to cancel this lease or shall be entitled forthwith to full and adequate relief by injunction and/or otherwise from the consequences of such a breach of covenant."

The 1967 amendment and modification of this clause is as follows, viz:

"Assignee shall not cancel this lease by reason of Lessor's violation of its exclusive rights insofar as they pertain to any property not encumbered by the first lender's mortgage, but on condition that Assignee does not thereby waive any rights against Lessor for damages or injunctive relief. In the event the holder of the first mortgage acquires the leased premises through foreclosure or otherwise, Assignee shall have the same rights granted by its Lease against the present Lessor or any other successor thereof.

"Anything in this Lease Agreement to the contrary notwithstanding, the Assignee and Lessor agree that Lessor may lease certain property designated on the plot plan attached hereto and designated as Exhibit B, to the S. S. Kresge Company, a Michigan corporation, for use as a 'K mart' discount department store, and a TBA store, both being designated on said Exhibit B."

Additional paragraphs were added by the 1967 amendment as follows, viz:

"The parties hereto agree to extend said Lease Agreement for a further and additional period of seven (7) years, with the result that said lease shall not expire on August 31, 1969, but shall instead expire on August 31, 1976, * * *"

\*     \*     \*     \*     \*     \*

"Anything in this Lease Agreement to the contrary notwithstanding, Assignee agrees that for breach or threatened breach of any of the covenants or conditions contained in the within numbered paragraph 7 hereinabove, that Assignee's remedy shall be solely for injunctive relief and/or damages."

Appellee, Midfield Park, filed its original bill for a declaratory judgment against Winn-Dixie, asking that Winn-Dixie be estopped from asserting that relocation of an A & P retail grocery store in the Midfield Park Shopping Center next door to Winn-Dixie's retail grocery store constituted a violation of the provisions of the lease agreement, as amended. Midfield Park's bill was subsequently amended to add A & P as a respondent.

Appellant, Winn-Dixie, later filed its cross-bill (which was subsequently amended) and alleged in the amended cross-bill that Midfield Park has executed a lease to A & P which demises the premises adjacent to the store occupied by Winn-Dixie; and, further that the premises immediately adjacent to the store occupied by appellant have not been used for the retail sale of groceries prior to the lease to A & P. Winn-Dixie's amended cross-bill further alleged that A & P is occupying the premises next to its store, which is within 1,000 feet of the store presently occupied by Winn-Dixie, and that A & P had actual knowledge of paragraph 18 of the lease agreement prior to altering, modifying or remodeling said premises for occupancy and use as a retail grocery store. Winn-Dixie averred that it would suffer continuing irreparable injury if the premises adja-

cent to its store are used as a retail grocery store by A & P. In the prayer for relief, Winn-Dixie sought an injunction and $500,000 as damages.

After the demurrers of appellees, Midfield Park and A & P, were sustained to the cross-bill, appellant, Winn-Dixie, sought and obtained a decree of dismissal with prejudice. This appeal then followed.

### Motion to Dismiss the Appeal

Appellees, Midfield Park and A & P, assert that the legislature did not intend, by the enactment of Act No. 72, Acts of Alabama, Special Session 1961, Vol. II, page 1947, approved September 15, 1961 (amending Title 7, Section 755, of the Code of 1940), to permit an appeal from a ruling sustaining a demurrer to a cross-bill until the entire cause has been finally determined. These appellees further assert that in this case, the entire cause has not been finally determined, because the cause is still pending on their original bill for a declaratory judgment and Winn-Dixie's answer, and no ruling has been made thereon by the trial court.

Title 7, Section 755, as amended, reads as follows:

"No appeal lies from any decree rendered in equity cases sustaining or overruling a demurrer to a bill in equity, or to a cross-bill. Either party may seek a dismissal of the cause where the demurrer is sustained and no amendment to the bill is made during the time allowed by the court, and the complainant may appeal from the final decree of dismissal, but nothing in this section shall prevent an assignment of errors on such decrees on appeals taken on the final determination of the cause."

Appellees, Midfield Park and A & P, further contend that the words "Either party," as used in this section, mean either complainant or respondent.

Appellees rely on certain language in the case of Vacalis v. Lowry, 279 Ala. 264, 184 So.2d 345 (1966), for their contentions. This case is inapposite, because *Vacalis* did not involve a cross-bill, and further, it involved a dismissal without prejudice, whereas here the cross-bill was dismissed with prejudice.

Appellant, Winn-Dixie, answers the appellees by asserting that:

"Since the first sentence of Section 755 specifically mentions a 'cross-bill,' by necessity the second sentence means that either a complainant or a cross-complainant may dismiss the complaint or cross-complaint when a demurrer is sustained and appeal from the final decree of dismissal of either the bill or cross-bill."

At first blush, it might appear (as appellant suggests) that by using the words "Either party" in the second sentence, following the first sentence which refers to "bill" and "cross-bill," it was the intention of the legislature to secure this right of appeal to either complainant or cross-complainant.

Our study, however, compels us to conclude that this was not its intention. Following are the steps which led us to this conclusion.

First, we think that, in using the words "Either party," in the section which precedes Section 755 (namely, Title 7, Section 754), the legislature clearly intended to refer to either complainant or respondent. We think that, in using the same words in Section 755, the same meaning is intended.

Thus, we take the meaning of Section 755 to be that, when a demurrer to an original bill is sustained, and complainant does not amend within the time allowed by court, either party (complainant or respondent) may seek a dismissal with prejudice. From such dismissal, only the complainant is granted the right of appeal. It seems obvious that the reason the respondent is given the same right as the complainant to seek a dismissal, is that the cause would still remain on the docket, notwithstanding

respondent's demurrer had been sustained and the time for amendment had passed. The respondent might understandably desire to have the cause dismissed and finally disposed of, notwithstanding his dismissal would pave the way for complainant to appeal, if the latter so chose.

■ Second, Equity Rule 26 requires that the cross-bill "be heard at the same time as the original bill." If an appeal by cross-complainant is permitted under Section 755 from the dismissal of the cross-bill, then the cause, as alleged in the original bill, would remain and could be disposed of on trial, while the appeal on the dismissal of the cross-bill would still be pending. This would defeat the requirement of Rule 26, that the bill and cross-bill be heard at the same time. Moreover, this disposal of causes piecemeal would not comport with the orderly disposal of cases on the trial and appellate levels.

■ Third, Equity Rule 26 and our case law require that the cross-bill allege a " * * * cause connected with or growing out of the bill * * *." Clark v. Case, 267 Ala. 229, 100 So.2d 747 (1958). Thus, the more reason to require, in the orderly administration of justice, that both bill and cross-bill be "heard at the same time," as Rule 26 states they should be.

■ Finally, there is further support for our conclusion. Having used the two terms "bill" and "cross-bill" in the first sentence of Section 755, would it not be expected that the legislature would use the same two terms in the second sentence, if it had been its intention to provide for appeals from a final decree dismissing a cross-bill? We think so.

In the light of the foregoing, we think the intent of the legislature, as expressed in Section 755, was to provide for appeals by the original complainant only from final decrees of dismissal of the original bill of complaint with prejudice, where a demurrer has been sustained and no amendment

has been made to the bill during the time allowed by the court.

It, therefore, follows that the appellees' motion to dismiss the appeal is granted. Thus, we do not reach the merits of the controversy respecting an interpretation of the restrictive covenant in the lease, as amended.

Appeal dismissed.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, MADDOX and McCALL, JJ., concur.

FAULKNER and JONES, JJ., dissent.

JONES, Justice (dissenting).

I respectfully dissent. The appellant's interpretation appears to me to express that which was intended by the legislature when it enacted Title 7, Section 755, Code of Alabama 1940, as last amended.

The words "Either party", which appear at the beginning of the second sentence, are at least sufficiently equivocal to raise a question as to its meaning; and, consequently, I would resolve this doubt in favor of allowing the appeal. I, therefore, would hold that an appeal may be effected under this section from a final decree sustaining a demurrer to a cross-bill and dismissing the cross-bill with prejudice.

Having denied the appellees' motion to dismiss the appeal, I would address the merits thusly: The single issue presented for determination on the appeal of this case on its merits, as posed by the pleadings, is:

Does the restrictive covenant of the lease agreement as amended prohibit the leasing by Midfield Park to A & P of the premises next to the store of Winn-Dixie?

I would answer this question in the negative and agree with the contentions of appellees, Midfield Park and A & P, that the restrictive covenant does not bind either of

them; and I would affirm the trial court's decree sustaining the demurrer to the appellant's cross-bill.

The pertinent passage of the restrictive covenant is quoted, viz:

"Lessor hereby warrants that its *heirs, executors, administrators, assigns and successors in title* during the term of this lease or any options herein granted will not lease, rent, occupy or permit to be occupied, or sell without a covenant prohibiting their use or occupancy as a store for retail business such as that of the Lessee, any presmises owned or leased by it or its legal representatives, not now occupied as such a store within a distance of 1,000 feet from the premises hereby demised, * * *." (Emphasis added.)

The rule of construction here applicable was stated in Canal Ins. Co. v. Stidham, 281 Ala. 493, 205 So.2d 516 (1967):

" * * * where the parties have reduced their agreement to writing, the writing, in the absence of fraud or mistake, is the sole expositor of the transaction and the agreement of the parties. A court cannot, under the guise of construction, provide a new and different contract for the parties. * * *". See also Babcock v. Smith, 285 Ala. 557, 234 So.2d 573 (1970).

When this rule of law is applied to the pertinent language of the lease agreement, the inescapable conclusion is that the lessor's heirs, etc. are bound by the restriction but not the lessor itself. The covenant shows on its face that it does not apply to the lessor, Midfield Park, nor to the lessee, A & P. In Springdale Gayfer's Store Co. v. D. H. Holmes Co., 281 Ala. 267, 201 So.2d 855 (1967), this court wrote:

" * * * Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation whose only effect is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left. * * *

" * * *

" * * * Where the language of the restriction is clear and unambiguous, it will be given its manifest meaning, * * *."

Appellant, Winn-Dixie, suggests:

"Although the intention of the parties might be more clearly stated had the words 'it and' been included, Paragraph 18, even as written, clearly binds Midfield Park and A & P. The paragraph restricts 'any premises owned or leased *by it* [Lessor] or *its* legal representatives.' In addition, the paragraph provides, 'Assignee shall not cancel this lease by reason of *Lessor's violation* of its exclusive rights,' and in the event of foreclosure 'Assignee shall have the same rights granted by its Lease *against the present Lessor* or any successor thereof.' These references to 'Lessor's violation' and rights 'against the present Lessor' clearly establish that the restrictions are *intended* to bind Midfield Park." (Emphasis and brackets are appellant's.)

In my opinion, the absence of the words "it and" following the phrase "Lessor hereby warrants that" in paragraph 18 of the lease agreement is a fatal defect; and the court must take the lease as it is written and cannot construe it to mean other than that which the parties expressed therein.

In so concluding, I am not unmindful of that line of cases holding to the effect that where the language in a contract is unclear or ambiguous on its face, or where a latent ambiguity exists, the court may look beyond the "four corners" of the instrument to determine the intent of the parties. In such cases of ambiguity, either of the pa-

tent or latent variety, parol testimony, as well as other written or oral arguments relating to the same subject matter, may be admissible to assist the court in its construction of the contract. See Ford v. Ward, 272 Ala. 235, 130 So.2d 380 (1961).

This rule of construction has no application here, however, since the plain and clear meaning of the language discloses no ambiguity on its face, nor does the appellant attempt to allege a latent ambiguity. Likewise, and for the same reason, there is no field of operation for the further rule announced in the *Springdale Gayfer's* case, supra, to the effect that any such doubts and ambiguities must be resolved against the party seeking enforcement. (For a discussion of the policy reasons for this rule, see 20 Am.Jur.2d, Covenants, Conditions, Etc., § 187, pp. 755–6.)

I would hold, therefore, that the decree of the trial court sustaining the demurrers to the appellant's amended cross-bill is due to be affirmed.

FAULKNER, J., concurs.