HOUSTON, Justice.
Container Corporation of America and Robert Dewitt Andrews appeal from the trial court’s denial of their post-trial motion in this case, in which a $400,000 judgment was entered in favor of plaintiff, Willie James Crosby, for injuries received in an elevator accident. We affirm.
Crosby was injured in an elevator accident that occurred on the premises of a paper mill owned by Container Corporation. At the time of the accident, Crosby was employed by Barnett Construction Company to do general clean-up work around a boiler at the paper mill. Crosby would haul debris away from the work area in a wheelbarrow. He would use an elevator to go between the work area and the ground. At the time of the accident, Crosby was on his way up to the work area. The elevator *156 rose to a point between the 4th and 6th floors and then fell, without warning, and landed on the large spring at the bottom of the elevator shaft. Crosby was injured in the fall and brought this suit against Container Corporation and Andrews, the superintendent of mechanical maintenance at the paper mill, claiming negligence and wantonness.
The following issues are raised on appeal:
I.Whether the trial court erred in submitting the claim of wanton conduct to the jury.
II.Whether the trial court erred in allowing testimony of the plaintiffs reputation for truth and veracity.
III.Whether the trial court erred in allowing testimony concerning the truth and varacity of the plaintiffs wife.
IY. Whether the trial court erred in denying a remittitur.
Y. Whether the jury verdict should be set aside as against the great weight of the evidence.
I.
Container Corporation and Andrews moved for directed verdict on the wantonness claim at the close of Crosby’s evidence and again at the close of all the evidence and filed a post-trial motion attacking the sufficiency of the evidence of wantonness. They argue that the trial court erred in submitting the issue of wantonness to the jury. We disagree. In Rosen v. Lawson, 281 Ala. 351, 355-56, 202 So.2d 716, 719-20 (1967), this Court held:
“[I]n considering the sufficiency of the evidence of wantonness to be submitted to the jury, this court must accept the adduced evidence most favorable to the plaintiff as true, and indulge such reasonable inferences as the jury was free to draw from the evidence. English v. Jacobs, 263 Ala. 376, 82 So.2d 542 [1955]; McNickle v. Stripling, 259 Ala. 576, 67 So.2d 832 [1953].”
The cause of the accident was a mechanical failure (a bolt sheared inside the drum gear and caused the elevator to fall). Even so, the elevator should not have fallen, because it was equipped with a safety device designed to prevent a free fall. The safety device did not operate because it had rusted and corroded to the point that it would no longer move. According to the elevator mechanic who made the inspection after the fall, the rust and corrosion were obvious and a visual inspection would have revealed the problem.
Andrews testified that a visual inspection of the elevator was conducted annually. Andrews also testified that there had been a mechanical malfunction involving the safety device on the elevator the year prior to this fall. The elevator was in a place where there was an above average likelihood of corrosion. The elevator repeatedly malfunctioned, and had done so on the day prior to the fall. The defendants admitted liability in the case, and the trial judge so instructed the jury. The only issue for the jury’s determination was whether the defendants’ conduct constituted wantonness.
This Court has defined “wantonness”:
“[T]he conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.”
McDougle v. Shaddrix, 534 So.2d 228 (Ala.1988).
This Court has held that an elevator, whether passenger or freight, is a common carrier and, as such, is to be operated and maintained with the highest degree of care. Ensley Holding Co. v. Kelley, 229 Ala. 650, 158 So. 896 (1934); Johnson v. Hopkins, 213 Ala. 492, 105 So. 663 (1925); O’Rourke v. Woodward, 201 Ala. 265, 77 So. 679 (1918); Morgan v. Saks, 143 Ala. 139, 38 So. 848 (1905).
There was a scintilla of evidence from which the jury could reasonably infer that Container Corporation and Andrews omitted their duty to maintain this elevator with the highest degree of care, knowing that their failure to do so would likely or probably result in a malfunction from which injury would result. We are of the *157 opinion that the trial court properly submitted the issue of wantonness to the jury.
II.
At trial, over objection of Container Corporation and Andrews, the court permitted a witness called by Crosby to give testimony that bolstered Crosby’s reputation for truth and veracity. The following exchange took place during the questioning of the plaintiff's witness:
“Q. Do you know his [Crosby’s] reputation for truth and veracity down there?
“Mr. Chapman: We object to that.
“The Court: Overrule it.
“Q. Go ahead. Just tell me yes or no. Do you know his reputation for truth and veracity down there?
“A. Yes sir, I’d say it’s good.
“Mr. Chapman: We object to that as not being responsive and move to exclude it.
“The Court: I’ll exclude it. It’s not responsive to this question.
“Q. You do know his reputation for truth and veracity down there?
“A. Yes, sir.
“Q. Is it good or bad?
“A. I’d say it’s good.”
Defendants contend that this evidence was improperly admitted, because, they say, there had been no effort to impeach Crosby. On cross-examination of Crosby, defense counsel proved that Crosby had testified differently in his deposition from the way he testified at trial concerning the height to which the elevator had risen before it fell. It is well established in Alabama that after a witness has been impeached by proof of contradictory statements, the party offering the witness may offer proof of the witness’s good reputation as a whole or with respect to his truth and veracity. Dickson v. Dinsmore, 219 Ala. 353, 122 So. 437, 438 (1929); C. Gamble, McElroy’s Alabama Evidence § 176.01(7) (3d ed. 1977). The trial court did not err in allowing this evidence to be presented to the jury.
III.
The defendants also contend that the trial court erred in admitting testimony that bolstered Ms. Helen Stalworth’s reputation for truth and veracity; Ms. Stal-worth was Crosby’s wife. At trial, Ms. Stalworth testified as to Crosby’s injuries. She testified that since the elevator fall, Crosby has been unable to return to work or to do many of the things he [Crosby] enjoyed doing prior to the accident. Later in the trial, and over objection by the defendant, the court permitted testimony that bolstered Ms. Stalworth’s reputation for truth and veracity. The following exchange took place during the questioning of a witness for the plaintiff:
“Q. Do you know his wife, Helen Stal-worth?
“A. Yes, sir.
“Q. How long have you known her?
“A. I imagine about eight or ten years.
“Q. Do you know her reputation in the community down there for truth and veracity?
“Mr. Chapman: Judge, we object to this line of questioning. In a civil case, this has nothing to do with this.
“The Court: Sir?
“Mr. Chapman: In a civil case, this line of questioning is improper.
“The Court: I have always been under the impression, and correct me if I’m wrong, that the truth and veracity of any witness that appears in any court is relevant and material.
“Mr. Chapman: We have not called that into question.
“The Court: They can still buttress their own witnesses by that unless I’m gravely wrong about it. Overrule the objection. Let’s proceed.
“Q. Do you know her reputation for truth and veracity?
“A. I’d say it was good.
“Q. Did you say yes or no?
“A. Yes.
“Q. Is it good or bad?
“A. Good.”
The defendants, at the time of this ruling, had not impeached, or attempted to *158 impeach, the character or testimony of Helen Stalworth, by the introduction of evidence of bad character on her part, or by any prior inconsistent statement allegedly made by her out of court. Nor was her character or reputation involved as an issue in the trial of this case in any manner. It is well established that the party offering the witness cannot offer proof of the witness’s good reputation as a whole or with respect to his truth and veracity unless an effort has been made by the non-offering party to impeach the witness’s character. See e.g., C. Gamble, McElroy’s Alabama Evidence, § 176.01(7) (3d ed. 1977); Trammell v. Disciplinary Board of the Alabama State Bar, 431 So.2d 1168 (Ala.1983); Bill Steber Chevrolet-Oldsmobile, Inc. v. Morgan, 429 So.2d 1013 (Ala.1983); Babcock v. Smith, 285 Ala. 557, 234 So.2d 573 (1970).
Since no effort was made to impeach Ms. Stalworth’s testimony, it was error to admit bolstering testimony into evidence over objection; however, the error does not require reversal, due to the following.
At trial, Ms. Stalworth testified that she was present when her husband and Dr. Woodham discussed the risk involved in performing a recommended surgical procedure. She then testified as to the content of that conversation. Later in the trial, and after the good character evidence was improperly introduced, the defendants called Dr. Woodham to testify. Through his testimony the defendants attempted to impeach Ms. Stalworth by showing that she was not present when Dr. Woodham discussed these risks with Mr. Crosby. We hold that although the admission of the bolstering testimony was error, the defendants’ subsequent attempt to impeach Ms. Stalworth’s testimony rendered the error harmless.
IV.
The trial court also denied the defendants’ motion for remittitur. The trial court in its order wrote:
“Regarding the defendants’ motion for a remittitur of damages, even without the case of wantonness, the jury verdict was well within the evidence of actual damages adduced by the plaintiff.”
This court has long recognized that the trial court is accorded a large measure of discretion in determining whether to grant or deny remittitur. Todd v. United Steelworkers of America, 441 So.2d 889 (Ala.1983); Airheart v. Green, 267 Ala. 689, 104 So.2d 687 (1958); Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633 (1948). The trial court is able to observe the witnesses and other incidents of the trial that cannot be reflected in the transcript and which are not available for observation by this Court. Airheart v. Green, supra. Even so, we, as an appellate court, have responsibility to require remit-titur when we “shall be of the opinion that the case should be reversed because the judgment of the lower court is excessive” (Code 1975, § 12-22-71). After examining the evidence, we conclude that the verdict is not excessive. Of the $400,000, it appears that $213,954 is the estimated amount of lost future wages and the medical expenses that have already been incurred. Crosby has a life expectancy of over 17 years. There is evidence that he has been in pain and that the pain will be worse periodically than it has been, for the remainder of his life. The balance of the award would amount to less than $30 a day for pain, mental suffering, and the dimin-ishment of his quality of life. Therefore, we agree with the trial court that the jury verdict was within the evidentiary limits of actual, or compensatory, damages, even though punitive damages also could have been assessed.
V.
Container Corporation and Andrews contend that the trial court erred in overruling their post-trial motion, because, they say, the verdict was not sustained by the great weight of the evidence. They contend that “the evidence overwhelmingly dictates a finding of no wanton conduct and thus fails to support the $400,000 verdict.”
After carefully reviewing the record, we are convinced that it contains testimony *159 which, if believed by the jury, justifies a verdict in favor of Crosby in the amount of $400,000. We find no error in the denial of defendants’ post-trial motion.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.